Exhibit 8

116TH CONGRESS
1st Session } HOUSE OF REPRESENTATIVES { REPORT
116–47

# ORANGE BOOK TRANSPARENCY ACT OF 2019

---

MAY 2, 2019.—Committed to the Committee of the Whole House on the State of the
Union and ordered to be printed

---

Mr. PALLONE, from the Committee on Energy and Commerce,
submitted the following

# R E P O R T

[To accompany H.R. 1503]

[Including cost estimate of the Congressional Budget Office]

The Committee on Energy and Commerce, to whom was referred
the bill (H.R. 1503) to amend the Federal Food, Drug, and Cos-
metic Act regarding the list under section 505(j)(7) of the Federal
Food, Drug, and Cosmetic Act, and for other purposes, having con-
sidered the same, report favorably thereon with an amendment and
recommend that the bill as amended do pass.

## CONTENTS

| | | Page |
|---|---|---|
| I. | Purpose and Summary | 3 |
| II. | Background and Need for the Legislation | 4 |
| III. | Committee Hearings | 4 |
| IV. | Committee Consideration | 5 |
| V. | Committee Votes | 5 |
| VI. | Oversight Findings | 5 |
| VII. | New Budget Authority, Entitlement Authority, and Tax Expenditures | 5 |
| VIII. | Congressional Budget Office Estimate | 6 |
| IX. | Federal Mandates Statement | 7 |
| X. | Statement of General Performance Goals and Objectives | 7 |
| XI. | Duplication of Federal Programs | 7 |
| XII. | Committee Cost Estimate | 8 |
| XIII. | Earmarks, Limited Tax Benefits, and Limited Tariff Benefits | 8 |
| XIV. | Advisory Committee Statement | 8 |
| XV. | Applicability to Legislative Branch | 8 |
| XVI. | Section-by-Section Analysis of the Legislation | 8 |
| XVII. | Changes in Existing Law Made by the Bill, as Reported | 9 |

The amendment is as follows:
Strike all after the enacting clause and insert the following:

89–006

2

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Orange Book Transparency Act of 2019".

**SEC. 2. ORANGE BOOK.**

(a) SUBMISSION OF PATENT INFORMATION FOR BRAND NAME DRUGS.—Paragraph (1) of section 505(b) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(b)) is amended to read as follows:

"(b)(1) Any person may file with the Secretary an application with respect to any drug subject to the provisions of subsection (a). Such persons shall submit to the Secretary as part of the application—

"(A) full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use;

"(B) a full list of the articles used as components of such drug;

"(C) a full statement of the composition of such drug;

"(D) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug;

"(E) such samples of such drug and of the articles used as components thereof as the Secretary may require;

"(F) specimens of the labeling proposed to be used for such drug;

"(G) any assessments required under section 505B; and

"(H) patent information, with respect to each patent for which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug, and consistent with the following requirements:

"(i) The applicant shall file with the application the patent number and the expiration date of—

"(I) any patent which claims the drug for which the applicant submitted the application and is a drug substance (including active ingredient) patent or a drug product (including formulation and composition) patent; and

"(II) any patent which claims the method of using such drug.

"(ii) If an application is filed under this subsection for a drug and a patent of the type described in clause (i) which claims such drug or a method of using such drug is issued after the filing date but before approval of the application, the applicant shall amend the application to include such patent information.

Upon approval of the application, the Secretary shall publish the information submitted under subparagraph (H). The Secretary shall, in consultation with the Director of the National Institutes of Health and with representatives of the drug manufacturing industry, review and develop guidance, as appropriate, on the inclusion of women and minorities in clinical trials required by subparagraph (A).".

(b) CONFORMING CHANGES TO REQUIREMENTS FOR SUBSEQUENT SUBMISSION OF PATENT INFORMATION.—Section 505(c)(2) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(j)(7)) is amended—

(1) by inserting after "the patent number and the expiration date of any patent which" the following: "fulfills the criteria in subsection (b) and";

(2) by inserting after the first sentence the following: "Patent information that is not the type of patent information required by subsection (b) shall not be submitted."; and

(3) by inserting after "could not file patent information under subsection (b) because no patent" the following: "of the type required to be submitted in subsection (b)".

(c) LISTING OF EXCLUSIVITIES.—Subparagraph (A) of section 505(j)(7) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(j)(7)) is amended by adding at the end the following:

"(iv) For each drug included on the list, the Secretary shall specify each exclusivity period that is applicable and has not concluded under—

"(I) clause (ii), (iii), or (iv) of subsection (c)(3)(E) of this section;

"(II) clause (iv) or (v) of paragraph (5)(B) of this subsection;

"(III) clause (ii), (iii), or (iv) of paragraph (5)(F) of this subsection;

"(IV) section 505A;

"(V) section 505E; or

"(VI) section 527(a).".

(d) REMOVAL OF INVALID PATENTS.—

(1) IN GENERAL.—Section 505(j)(7) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(j)(7)) is amended by adding at the end the following:

"(D)(i) The holder of an application approved under subsection (c) for a drug on the list shall notify within 14 days the Secretary in writing if either of the following occurs:

3

"(I) The Patent Trial and Appeals Board issues a decision from which no appeal has been or can be taken that a patent for such drug is invalid.

"(II) A court issues a decision from which no appeal has been or can be taken that a patent for such drug is invalid.

"(ii) The holder of an approved application shall include in any notification under clause (i) a copy of the decision described in subclause (I) or (II) of clause (i).

"(iii) The Secretary shall remove from the list any patent that is determined to be invalid in a decision described in subclause (I) or (II) of clause (i)—

"(I) promptly; but

"(II) not before the expiration of any 180-day exclusivity period under paragraph (5)(B)(iv) that relies on a certification described in paragraph (2)(A)(vii)(IV) that such patent was invalid.".

(2) APPLICABILITY.—Subparagraph (D) of section 505(j)(7) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(j)(7)), as added by paragraph (1), applies only with respect to a decision described in such subparagraph that is issued on or after the date of enactment of this Act.

(e) REVIEW AND REPORT.—Not later than one year after the date of enactment of this Act, the Secretary of Health and Human Services, acting through the Commissioner of Food and Drugs, shall—

(1) solicit public comment regarding the types of patent information that should be included on the list under section 507(j)(7) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(j)(7)); and

(2) transmit to the Congress an evaluation of such comments, including any recommendations about the types of patent information that should be included on or removed from such list.

**SEC. 3. GAO REPORT TO CONGRESS.**

(a) IN GENERAL.—Not later than one year after the date of enactment of this Act, the Comptroller General of the United States (referred to in this section as the "Comptroller General") shall submit to the Committee on Energy and Commerce of the House of Representatives a report on the patents included in the list published under section 505(j)(7) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 355(j)(7)), including an analysis and evaluation of the types of patents included in such list and the claims such patents make about the products they claim.

(b) CONTENTS.—The Comptroller General shall include in the report under subsection (a)—

(1) data on the number of—

(A) patents included in the list published under paragraph (7) of section 505(j) of the Federal Food and Drug and Cosmetic Act (21 U.S.C. 355(j)), that claim the active ingredient or formulation of a drug in combination with a device that is used for delivery of the drug, together comprising the finished dosage form of the drug; and

(B) claims in each patent that claim a device that is used for the delivery of the drug, but do not claim such device in combination with an active ingredient or formulation of a drug;

(2) data on the date of inclusion in the list under paragraph (7) of such section 505(j) for all patents under such list, as compared to patents that claim a method of using the drug in combination with a device;

(3) an analysis regarding the impact of including on the list under paragraph (7) of such section 505(j) certain types of patent information for drug product applicants and approved application holders, including an analysis of whether—

(A) the listing of the patents described in paragraph (1)(A) delayed the market entry of one or more drugs approved under such section 505(j); and

(B) not listing the patents described in paragraph (1)(A) would delay the market entry of one or more such drugs; and

(4) recommendations about which kinds of patents relating to devices described in paragraph (1)(A) should be submitted to the Secretary of Health and Human Services for inclusion on the list under paragraph (7) of such section 505(j) and which patents should not be required to be so submitted.

## PURPOSE AND SUMMARY

H.R. 1503, the "Orange Book Transparency Act of 2019", was introduced on March 5, 2019, by Rep. Kelly (D–IL), and referred to the Committee on Energy and Commerce. H.R. 1503 would require manufacturers to share complete and timely patent information with the Food and Drug Administration (FDA), ensure that periods of exclusivity listed in the Orange Book are promptly updated, and

4

clarify that patents found to be invalid through a court decision or a decision by the Patent Trial and Appeal Board would be required to be removed from the Orange Book promptly, but not before time for appeal has expired. The bill would also direct the U.S. General Accountability Office (GAO) to study which types of patents should be listed in the Orange Book.

## Background and Need for Legislation

Approved branded and generic drug products currently marketed are included on a list commonly referred to as the "Orange Book,"[1] which is published on the FDA's website and includes, among other details, the patents that protect each product, the product's application number, and some related exclusivities. Drug manufacturers are required to list with FDA patent information related to their drug.[2] This listing in the Orange Book is used by generic manufacturers to make development decisions as it provides information about when patents or exclusivities associated with an approved drug will expire.

While FDA has issued regulations clarifying certain types of patents that must be submitted to the agency and certain types that must not be submitted, many patents are complex and may not fall clearly into the types identified by FDA. As a result, some branded drug manufacturers may choose not to submit every patent on a product to the FDA, and others are submitting patents potentially for the purpose of blocking generic competition.[3] Further, some stakeholders have been critical that the patent information included in the Orange Book is not as accurate or up-to-date as it could be.

This legislation would help to ensure that the Orange Book is accurate and up-to-date, by specifying what information must be submitted to FDA and what information should be listed, clarifying that invalid patents must be removed in a timely manner, directing FDA to solicit public comment on the types of information that should be listed in the Orange Book an evaluation of such comments to Congress, and the GAO to study whether certain patents should, or should not be listed in the Orange Book.

## Committee Hearings

For the purposes of section 103(i) of H. Res. 6 of the 116th Congress, the following hearing was used to develop or consider H.R. 1503:

The Subcommittee on Health held a legislative hearing on March 13, 2019, to consider H.R. 1503, the "Orange Book Transparency Act of 2019" and six other bills. The hearing was entitled, "Lowing the Cost of Prescription Drugs: Reducing Barriers to Market Competition." The Subcommittee received testimony from:

- Lou Kennedy, Chief Executive Officer and Owner, Nephron Pharmaceuticals;

---

[1] Food and Drug Administration, *Approved Drug Products with Therapeutic Equivalence Evaluations (Orange Book)* (https://www.fda.gov/Drugs/InformationOnDrugs/ucm129662.htm).

[2] 21 C.F.R. 314.53

[3] Reed F Bell & Aaron S Kesselheim, *Tertiary patenting on drug—device combination products in the United States,* (https://www.nature.com/articles/nbt.4078.epdf?author_access_token=k19waka6yXhVtkaCGFOdRgN0jAjWel9jnR3ZoTv0MGOAdGITA-e4st1uwIqL0ZGE0-17DL5n2Qg8u7csdohGlFGwUWdjvieJtiDwzfoldY3_E4HS6rf7YbpkcyvI2u).

5

- Anthony Barrueta, Senior Vice President for Government Relations, Kaiser Permanente;
- Michael Carrier, Distinguished Professor, Rutgers Law School;
- Kurt Karst, Director, Hyman, Phelps & McNamara, P.C.;
- Jeff Kushan, Partner, Sidley Austin LLP;
- Marc M. Boutin, JD, Chief Executive Officer, National Health Council; and
- Chester "Chip" Davis, Jr., President and Chief Executive Officer, Association for Accessible Medicines.

## COMMITTEE CONSIDERATION

H.R. 1503, the "Orange Book Transparency Act of 2019", was introduced on March 5, 2019, by Rep. Kelly (D–IL), and referred to the Committee on Energy and Commerce. The bill was subsequently referred to the Subcommittee on Health on March 6, 2019. Following legislative hearings, the Subcommittee met in open markup session on H.R. 1503 on March 27, 2019, pursuant to notice, for consideration of the bill. A manager's amendment offered by Ms. Kelly was adopted by a voice vote. Subsequently, the Subcommittee on Health agreed to a motion by Ms. Eshoo, Chairwoman of the Subcommittee, to favorably forward H.R. 1503 to the full Committee on Energy and Commerce, amended.

The full Committee on Energy and Commerce met in open markup session, pursuant to notice, on April 3, 2019, to consider H.R. 1503, as amended by the subcommittee. An amendment by Ms. Kelly and Mr. Guthrie was adopted by a voice vote. At the conclusion of consideration and markup of the bill, the Committee agreed to a motion by Mr. Pallone, Chairman of the Committee, to order H.R. 1503 favorably reported to the House, amended, by a voice vote.

## COMMITTEE VOTES

Clause 3(b) of rule XIII of the Rules of the House of Representatives requires the Committee to list each record vote on the motion to report legislation and amendments thereto. The Committee advises that there were no record votes taken on H.R. 1503. A motion by Mr. Pallone to order H.R. 1503 favorably reported to the House, amended, was agreed to by a voice vote.

## OVERSIGHT FINDINGS

Pursuant to clause 3(c)(1) of rule XIII and clause 2(b)(1) of rule X of the Rules of the House of Representatives, the oversight findings and recommendations of the Committee are reflected in the descriptive portion of the report.

## NEW BUDGET AUTHORITY, ENTITLEMENT AUTHORITY, AND TAX EXPENDITURES

Pursuant to 3(c)(2) of rule XIII of the Rules of the House of Representatives, the Committee adopts as its own the estimate of new budget authority, entitlement authority, or tax expenditures or revenues contained in the cost estimate prepared by the Director of

6

the Congressional Budget Office pursuant to section 402 of the Congressional Budget Act of 1974.

CONGRESSIONAL BUDGET OFFICE ESTIMATE

With respect to the requirements of clause (3)(c)(3) of rule XIII of the Rules of the House of Representatives and section 402 of the Congressional Budget Act of 1974, the Committee has received the following cost estimate for H.R. 1503 from the Director of Congressional Budget Office:

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, May 1, 2019.*

Hon. FRANK PALLONE, Jr.,
*Chairman, Committee on Energy and Commerce,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 1503, the Orange Book Transparency Act of 2019.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Julia Christensen.

Sincerely,

KEITH HALL,
*Director.*

Enclosure.

| H.R. 1503, Orange Book Transparency Act of 2019 | | | |
|---|---|---|---|
| As ordered reported by the House Committee on Energy and Commerce on April 3, 2019 | | | |
| By Fiscal Year, Millions of Dollars | 2019 | 2019-2024 | 2019-2029 |
| Direct Spending (Outlays) | 0 | 0 | 0 |
| Revenues | 0 | 0 | 0 |
| Deficit Effect | 0 | 0 | 0 |
| Spending Subject to Appropriation (Outlays) | 0 | 1 | n.e. |
| Pay-as-you-go procedures apply? | No | Mandate Effects | |
| Increases on-budget deficits in any of the four consecutive 10-year periods beginning in 2030? | No | Contains intergovernmental mandate? | No |
| | | Contains private-sector mandate? | Yes, Under Threshold |
| n.e. = not estimated. | | | |

Under current law, the Food and Drug Administration (FDA) publishes a compendium entitled, *Approved Drug Products with Therapeutic Equivalence Evaluations*, commonly referred to as the "Orange Book." The Orange Book identifies drug products approved on the basis of safety and effectiveness by FDA and provides associated patent and exclusivity information. FDA updates the Orange Book on a regular basis. H.R. 1503 would codify current regulations and practice regarding the types of patent and exclusivity-related information listed in the Orange Book.

H.R. 1503 also would require the prompt removal of certain patents from the Orange Book that have been invalidated by a ruling

of the Patent Trial and Appeal Board at the United States Patent and Trademark Office.

The bill would require FDA to solicit public comments regarding the types of patent information that should be listed in the Orange Book. Within one year of enactment, FDA would be required to transmit to the Congress an evaluation of such comments, including any recommendations about the types of patent information that should be included on or removed from such list.

In addition, H.R. 1503 would direct the General Accountability Office (GAO) to conduct a study that analyzes certain patents with claims relating to devices listed in the Orange Book and evaluates the extent to which listing such patents has affected the timing for the entry of generic drugs into the market. The bill would require GAO to submit the report to the Congress within one year of enactment.

Based on the costs of similar activities, CBO estimates that implementing the bill would cost $1 million, primarily for FDA's personnel-related expenses to comply with the bill's reporting requirements. Any such spending would be subject to the availability of appropriated funds.

H.R. 1503 would impose a private-sector mandate as defined in the Unfunded Mandates Reform Act (UMRA) by requiring drug manufacturers to notify the FDA when the Patent Trial and Appeals Board or another court finds a drug patent to be invalid. CBO estimates the cost of the mandate would fall well below the private-sector threshold established in UMRA ($164 million in 2019, adjusted annually for inflation).

The CBO staff contacts for this estimate are Julia Christensen (for federal costs) and Andrew Laughlin (for mandates). The estimate was reviewed by Leo Lex, Deputy Assistant Director for Budget Analysis.

### FEDERAL MANDATES STATEMENT

The Committee adopts as its own the estimate of Federal mandates prepared by the Director of the Congressional Budget Office pursuant to section 423 of the Unfunded Mandates Reform Act.

### STATEMENT OF GENERAL PERFORMANCE GOALS AND OBJECTIVES

Pursuant to clause 3(c)(4) of rule XIII, the general performance goal or objective of this legislation is to amend the Food, Drug, and Cosmetic Act to clarify which patents should be submitted to FDA, that exclusivity periods should be included on the list under 505(j)(7)(A) of the Act, and when invalid patents should be removed from that list. The bill also directs the Comptroller General to conduct a study about the types of patents that are currently included on this list and whether they should continue to be included on this list.

### DUPLICATION OF FEDERAL PROGRAMS

Pursuant to clause 3(c)(5) of rule XIII, no provision of H.R. 1503 is known to be duplicative of another Federal program, including any program that was included in a report to Congress pursuant to section 21 of Public Law 111–139 or the most recent Catalog of Federal Domestic Assistance.

8

### Committee Cost Estimate

Pursuant to clause 3(d)(1) of rule XIII, the Committee adopts as its own the cost estimate prepared by the Director of the Congressional Budget Office pursuant to section 402 of the Congressional Budget Act of 1974.

### Earmarks, Limited Tax Benefits, and Limited Tariff Benefits

Pursuant to clause 9(e), 9(f), and 9(g) of rule XXI, the Committee finds that H.R. 1503 contains no earmarks, limited tax benefits, or limited tariff benefits.

### Advisory Committee Statement

No advisory committees within the meaning of section 5(b) of the Federal Advisory Committee Act were created by this legislation.

### Applicability to Legislative Branch

The Committee finds that the legislation does not relate to the terms and conditions of employment or access to public services or accommodations within the meaning of section 102(b)(3) of the Congressional Accountability Act.

### Section-by-Section Analysis of the Legislation

*Section 1: Short title*

This Act may be cited as the "Orange Book Transparency Act of 2019".

*Section 2: Orange Book*

Subsection (a) amends section 505(b) of the Federal Food, Drug, and Cosmetic Act (FDCA) to require FDA to include the following patent information for a drug in the Orange Book: drug substance patents, drug product patents, and method of use patents.

Subsection (b) amends the requirements for subsequent submissions of patent information in Section 505(c)(2) to conform to the clarified requirements in 505(b).

Subsection (c) requires the Secretary to specify each exclusivity period for drugs listed in the Orange Book.

Subsection (d) requires that approved drug application holders promptly notify FDA if one of their listed patents is found invalid in a decision from either the Patent Trial and Appeals Board or a court issues a decision from which no appeal has been or can be taken. The legislation further requires that FDA remove a patent from this list promptly if it is found to be invalid, but not before the expiration of any 180-day exclusivity period.

Subsection (e) requires FDA to solicit public comment regarding the types of patent information that should be included on the "Orange Book" and transmit to Congress an evaluation of such comments, including any recommendations about the types of information that should be included or removed from the list.

*Section 3: GAO report to Congress*

Section 3 directs GAO to analyze and evaluate the types of patents included in the Orange Book and the claims such patents

9

make about the products they claim, and to include in such analysis specific data and recommendations about the types of patents that should be listed.

CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3(e) of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, and existing law in which no change is proposed is shown in roman):

## FEDERAL FOOD, DRUG, AND COSMETIC ACT

\*        \*        \*        \*        \*        \*        \*

### CHAPTER V—DRUGS AND DEVICES

SUBCHAPTER A—DRUGS AND DEVICES

\*        \*        \*        \*        \*        \*        \*

NEW DRUGS

SEC. 505. (a) No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug.

(b)〔(1) Any person may file with the Secretary an application with respect to any drug subject to the provisions of subsection (a). Such persons shall submit to the Secretary as a part of the application (A) full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use; (B) a full list of the articles used as components of such drug; (C) a full statement of the composition of such drug; (D) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug; (E) such samples of such drug and of the articles used as components thereof as the Secretary may require; (F) specimens of the labeling proposed to be used for such drug, and (G) any assessments required under section 505B. The applicant shall file with the application the patent number and the expiration date of any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture use, or sale of the drug. If a application is filed under this subsection for a drug and a patent which claims such drug or a method of using such drug is issued after the filing date but before approval of the application, the applicant shall amend the application to include the information required by the preceding sentence. Upon approval of the application, the Secretary shall publish information submitted under the two preceding sentences. The Secretary shall, in consultation with the Director of the National Institutes of Health and with representatives of the drug manufacturing industry, review and develop guidance, as appro-

10

priate, on the inclusion of women and minorities in clinical trials required by clause (A).】*(1) Any person may file with the Secretary an application with respect to any drug subject to the provisions of subsection (a). Such persons shall submit to the Secretary as part of the application—*

*(A) full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use;*

*(B) a full list of the articles used as components of such drug;*

*(C) a full statement of the composition of such drug;*

*(D) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug;*

*(E) such samples of such drug and of the articles used as components thereof as the Secretary may require;*

*(F) specimens of the labeling proposed to be used for such drug;*

*(G) any assessments required under section 505B; and*

*(H) patent information, with respect to each patent for which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug, and consistent with the following requirements:*

*(i) The applicant shall file with the application the patent number and the expiration date of—*

*(I) any patent which claims the drug for which the applicant submitted the application and is a drug substance (including active ingredient) patent or a drug product (including formulation and composition) patent; and*

*(II) any patent which claims the method of using such drug.*

*(ii) If an application is filed under this subsection for a drug and a patent of the type described in clause (i) which claims such drug or a method of using such drug is issued after the filing date but before approval of the application, the applicant shall amend the application to include such patent information.*

*Upon approval of the application, the Secretary shall publish the information submitted under subparagraph (H). The Secretary shall, in consultation with the Director of the National Institutes of Health and with representatives of the drug manufacturing industry, review and develop guidance, as appropriate, on the inclusion of women and minorities in clinical trials required by subparagraph (A).*

(2) An application submitted under paragraph (1) for a drug for which the investigations described in clause (A) of such paragraph and relied upon by the applicant for approval of the application were not conducted by or for the applicant and for which the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted shall also include—

(A) a certification, in the opinion of the applicant and to the best of his knowledge, with respect to each patent which claims the drug for which such investigations were conducted or

11

which claims a use for such drug for which the applicant is seeking approval under this subsection and for which information is required to be filed under paragraph (1) or subsection (c)—

(i) that such patent information has not been filed,

(ii) that such patent has expired,

(iii) of the date on which such patent will expire, or

(iv) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted; and

(B) if with respect to the drug for which investigations described in paragraph (1)(A) were conducted information was filed under paragraph (1) or subsection (c) for a method of use patent which does not claim a use for which the applicant is seeking approval under this subsection, a statement that the method of use patent does not claim such a use.

(3) NOTICE OF OPINION THAT PATENT IS INVALID OR WILL NOT BE INFRINGED.—

(A) AGREEMENT TO GIVE NOTICE.—An applicant that makes a certification described in paragraph (2)(A)(iv) shall include in the application a statement that the applicant will give notice as required by this paragraph.

(B) TIMING OF NOTICE.—An applicant that makes a certification described in paragraph (2)(A)(iv) shall give notice as required under this paragraph—

(i) if the certification is in the application, not later than 20 days after the date of the postmark on the notice with which the Secretary informs the applicant that the application has been filed; or

(ii) if the certification is in an amendment or supplement to the application, at the time at which the applicant submits the amendment or supplement, regardless of whether the applicant has already given notice with respect to another such certification contained in the application or in an amendment or supplement to the application.

(C) RECIPIENTS OF NOTICE.—An applicant required under this paragraph to give notice shall give notice to—

(i) each owner of the patent that is the subject of the certification (or a representative of the owner designated to receive such a notice); and

(ii) the holder of the approved application under this subsection for the drug that is claimed by the patent or a use of which is claimed by the patent (or a representative of the holder designated to receive such a notice).

(D) CONTENTS OF NOTICE.—A notice required under this paragraph shall—

(i) state that an application that contains data from bioavailability or bioequivalence studies has been submitted under this subsection for the drug with respect to which the certification is made to obtain approval to engage in the commercial manufacture, use, or sale of the drug before the expiration of the patent referred to in the certification; and

12

    (ii) include a detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed.

(4)(A) An applicant may not amend or supplement an application referred to in paragraph (2) to seek approval of a drug that is a different drug than the drug identified in the application as submitted to the Secretary.

(B) With respect to the drug for which such an application is submitted, nothing in this subsection or subsection (c)(3) prohibits an applicant from amending or supplementing the application to seek approval of a different strength.

(5)(A) The Secretary shall issue guidance for the individuals who review applications submitted under paragraph (1) or under section 351 of the Public Health Service Act, which shall relate to promptness in conducting the review, technical excellence, lack of bias and conflict of interest, and knowledge of regulatory and scientific standards, and which shall apply equally to all individuals who review such applications.

(B) The Secretary shall meet with a sponsor of an investigation or an applicant for approval for a drug under this subsection or section 351 of the Public Health Service Act if the sponsor or applicant makes a reasonable written request for a meeting for the purpose of reaching agreement on the design and size—

    (i)(I) of clinical trials intended to form the primary basis of an effectiveness claim; or

    (II) in the case where human efficacy studies are not ethical or feasible, of animal and any associated clinical trials which, in combination, are intended to form the primary basis of an effectiveness claim; or

    (ii) with respect to an application for approval of a biological product under section 351(k) of the Public Health Service Act, of any necessary clinical study or studies.

The sponsor or applicant shall provide information necessary for discussion and agreement on the design and size of the clinical trials. Minutes of any such meeting shall be prepared by the Secretary and made available to the sponsor or applicant upon request.

(C) Any agreement regarding the parameters of the design and size of clinical trials of a new drug under this paragraph that is reached between the Secretary and a sponsor or applicant shall be reduced to writing and made part of the administrative record by the Secretary. Such agreement shall not be changed after the testing begins, except—

    (i) with the written agreement of the sponsor or applicant; or

    (ii) pursuant to a decision, made in accordance with subparagraph (D) by the director of the reviewing division, that a substantial scientific issue essential to determining the safety or effectiveness of the drug has been identified after the testing has begun.

(D) A decision under subparagraph (C)(ii) by the director shall be in writing and the Secretary shall provide to the sponsor or applicant an opportunity for a meeting at which the director and the sponsor or applicant will be present and at which the director will document the scientific issue involved.

13

(E) The written decisions of the reviewing division shall be binding upon, and may not directly or indirectly be changed by, the field or compliance division personnel unless such field or compliance division personnel demonstrate to the reviewing division why such decision should be modified.

(F) No action by the reviewing division may be delayed because of the unavailability of information from or action by field personnel unless the reviewing division determines that a delay is necessary to assure the marketing of a safe and effective drug.

(G) For purposes of this paragraph, the reviewing division is the division responsible for the review of an application for approval of a drug under this subsection or section 351 of the Public Health Service Act (including all scientific and medical matters, chemistry, manufacturing, and controls).

(6) An application submitted under this subsection shall be accompanied by the certification required under section 402(j)(5)(B) of the Public Health Service Act. Such certification shall not be considered an element of such application.

(c)(1) Within one hundred and eighty days after the filing of an application under subsection (b), or such additional period as may be agreed upon by the Secretary and the applicant, the Secretary shall either—

(A) approve the application if he then finds that none of the grounds for denying approval specified in subsection (d) applies, or

(B) give the applicant notice of an opportunity for a hearing before the Secretary under subsection (d) on the question whether such application is approvable. If the applicant elects to accept the opportunity for hearing by written request within thirty days after such notice, such hearing shall commence not more than ninety days after the expiration of such thirty days unless the Secretary and the applicant otherwise agree. Any such hearing shall thereafter be conducted on an expedited basis and the Secretary's order thereon shall be issued within ninety days after the date fixed by the Secretary for filing final briefs.

(2) If the patent information described in subsection (b) could not be filed with the submission of an application under subsection (b) because the application was filed before the patent information was required under subsection (b) or a patent was issued after the application was approved under such subsection, the holder of an approved application shall file with the Secretary, the patent number and the expiration date of any patent which *fulfills the criteria in subsection (b) and* claims the drug for which the application was submitted or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug. *Patent information that is not the type of patent information required by subsection (b) shall not be submitted.* If the holder of an approved application could not file patent information under subsection (b) because it was not required at the time the application was approved, the holder shall file such information under this subsection not later than thirty days after the date of the enactment of this sentence, and if the holder of an approved application could not file patent information

14

under subsection (b) because no patent *of the type required to be submitted in subsection (b)* had been issued when an application was filed or approved, the holder shall file such information under this subsection not later than thirty days after after the date the patent involved is issued. Upon the submission of patent information under this subsection, the Secretary shall publish it.

(3) The approval of an application filed under subsection (b) which contains a certification required by paragraph (2) of such subsection shall be made effective on the last applicable date determined by applying the following to each certification made under subsection (b)(2)(A):

(A) If the applicant only made a certification described in clause (i) or (ii) of subsection (b)(2)(A) or in both such clauses, the approval may be made effective immediately.

(B) If the applicant made a certification described in clause (iii) of subsection (b)(2)(A), the approval may be made effective on the date certified under clause (iii).

(C) If the applicant made a certification described in clause (iv) of subsection (b)(2)(A), the approval shall be made effective immediately unless, before the expiration of 45 days after the date on which the notice described in subsection (b)(3) is received, an action is brought for infringement of the patent that is the subject of the certification and for which information was submitted to the Secretary under paragraph (2) or subsection (b)(1) before the date on which the application (excluding an amendment or supplement to the application) was submitted. If such an action is brought before the expiration of such days, the approval may be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under subsection (b)(3) or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action, except that—

(i) if before the expiration of such period the district court decides that the patent is invalid or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity), the approval shall be made effective on—

(I) the date on which the court enters judgment reflecting the decision; or

(II) the date of a settlement order or consent decree signed and entered by the court stating that the patent that is the subject of the certification is invalid or not infringed;

(ii) if before the expiration of such period the district court decides that the patent has been infringed—

(I) if the judgment of the district court is appealed, the approval shall be made effective on—

(aa) the date on which the court of appeals decides that the patent is invalid or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity); or

(bb) the date of a settlement order or consent decree signed and entered by the court of appeals

15

  stating that the patent that is the subject of the certification is invalid or not infringed; or

  (II) if the judgment of the district court is not appealed or is affirmed, the approval shall be made effective on the date specified by the district court in a court order under section 271(e)(4)(A) of title 35, United States Code;

 (iii) if before the expiration of such period the court grants a preliminary injunction prohibiting the applicant from engaging in the commercial manufacture or sale of the drug until the court decides the issues of patent validity and infringement and if the court decides that such patent is invalid or not infringed, the approval shall be made effective as provided in clause (i); or

 (iv) if before the expiration of such period the court grants a preliminary injunction prohibiting the applicant from engaging in the commercial manufacture or sale of the drug until the court decides the issues of patent validity and infringement and if the court decides that such patent has been infringed, the approval shall be made effective as provided in clause (ii).

In such an action, each of the parties shall reasonably cooperate in expediting the action.

 (D) CIVIL ACTION TO OBTAIN PATENT CERTAINTY.—

  (i) DECLARATORY JUDGMENT ABSENT INFRINGEMENT ACTION.—

   (I) IN GENERAL.—No action may be brought under section 2201 of title 28, United States Code, by an applicant referred to in subsection (b)(2) for a declaratory judgment with respect to a patent which is the subject of the certification referred to in subparagraph (C) unless—

    (aa) the 45-day period referred to in such subparagraph has expired;

    (bb) neither the owner of such patent nor the holder of the approved application under subsection (b) for the drug that is claimed by the patent or a use of which is claimed by the patent brought a civil action against the applicant for infringement of the patent before the expiration of such period; and

    (cc) in any case in which the notice provided under paragraph (2)(B) relates to noninfringement, the notice was accompanied by a document described in subclause (III).

   (II) FILING OF CIVIL ACTION.—If the conditions described in items (aa), (bb), and as applicable, (cc) of subclause (I) have been met, the applicant referred to in such subclause may, in accordance with section 2201 of title 28, United States Code, bring a civil action under such section against the owner or holder referred to in such subclause (but not against any owner or holder that has brought such a civil action against the applicant, unless that civil action was dismissed without prejudice) for a declaratory judgment that the

16

patent is invalid or will not be infringed by the drug for which the applicant seeks approval, except that such civil action may be brought for a declaratory judgment that the patent will not be infringed only in a case in which the condition described in subclause (I)(cc) is applicable. A civil action referred to in this subclause shall be brought in the judicial district where the defendant has its principal place of business or a regular and established place of business.

(III) OFFER OF CONFIDENTIAL ACCESS TO APPLICATION.—For purposes of subclause (I)(cc), the document described in this subclause is a document providing an offer of confidential access to the application that is in the custody of the applicant referred to in subsection (b)(2) for the purpose of determining whether an action referred to in subparagraph (C) should be brought. The document providing the offer of confidential access shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information. A request for access to an application under an offer of confidential access shall be considered acceptance of the offer of confidential access with the restrictions as to persons entitled to access, and on the use and disposition of any information accessed, contained in the offer of confidential access, and those restrictions and other terms of the offer of confidential access shall be considered terms of an enforceable contract. Any person provided an offer of confidential access shall review the application for the sole and limited purpose of evaluating possible infringement of the patent that is the subject of the certification under subsection (b)(2)(A)(iv) and for no other purpose, and may not disclose information of no relevance to any issue of patent infringement to any person other than a person provided an offer of confidential access. Further, the application may be redacted by the applicant to remove any information of no relevance to any issue of patent infringement.

(ii) COUNTERCLAIM TO INFRINGEMENT ACTION.—

(I) IN GENERAL.—If an owner of the patent or the holder of the approved application under subsection (b) for the drug that is claimed by the patent or a use of which is claimed by the patent brings a patent infringement action against the applicant, the applicant may assert a counterclaim seeking an order requiring the holder to correct or delete the patent information submitted by the holder under subsection (b) or this subsection on the ground that the patent does not claim either—

(aa) the drug for which the application was approved; or

(bb) an approved method of using the drug.

17

(II) No independent cause of action.—Subclause (I) does not authorize the assertion of a claim described in subclause (I) in any civil action or proceeding other than a counterclaim described in subclause (I).

(iii) No damages.—An applicant shall not be entitled to damages in a civil action under clause (i) or a counterclaim under clause (ii).

(E)(i) If an application (other than an abbreviated new drug application) submitted under subsection (b) for a drug, no active ingredient (including any ester or salt of the active ingredient) of which has been approved in any other application under subsection (b), was approved during the period beginning January 1, 1982, and ending on the date of the enactment of this subsection, the Secretary may not make the approval of another application for a drug for which the investigations described in clause (A) of subsection (b)(1) and relied upon by the applicant for approval of the application were not conducted by or for the applicant and for which the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted effective before the expiration of ten years from the date of the approval of the application previously approved under subsection (b).

(ii) If an application submitted under subsection (b) for a drug, no active ingredient (including any ester or salt of the active ingredient) of which has been approved in any other application under subsection (b), is approved after the date of the enactment of this clause, no application which refers to the drug for which the subsection (b) application was submitted and for which the investigations described in clause (A) of subsection (b)(1) and relied upon by the applicant for approval of the application were not conducted by or for the applicant and for which the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted may be submitted under subsection (b) before the expiration of five years from the date of the approval of the application under subsection (b), except that such an application may be submitted under subsection (b) after the expiration of four years from the date of the approval of the subsection (b) application if it contains a certification of patent invalidity or noninfringement described in clause (iv) of subsection (b)(2)(A). The approval of such an application shall be made effective in accordance with this paragraph except that, if an action for patent infringement is commenced during the one-year period beginning forty-eight months after the date of the approval of the subsection (b) application, the thirty-month period referred to in subparagraph (C) shall be extended by such amount of time (if any) which is required for seven and one-half years to have elapsed from the date of approval of the subsection (b) application.

(iii) If an application submitted under subsection (b) for a drug, which includes an active ingredient (including any ester or salt of the active ingredient) that has been approved in another application approved under subsection (b), is approved after the date of the enactment of this clause and if such appli-

18

cation contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the application and conducted or sponsored by the applicant, the Secretary may not make the approval of an application submitted under subsection (b) for the conditions of approval of such drug in the approved subsection (b) application effective before the expiration of three years from the date of the approval of the application under subsection (b) if the investigations described in clause (A) of subsection (b)(1) and relied upon by the applicant for approval of the application were not conducted by or for the applicant and if the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted.

(iv) If a supplement to an application approved under subsection (b) is approved after the date of enactment of this clause and the supplement contains reports of new clinical investigations (other than bioavailabilty studies) essential to the approval of the supplement and conducted or sponsored by the person submitting the supplement, the Secretary may not make the approval of an application submitted under subsection (b) for a change approved in the supplement effective before the expiration of three years from the date of the approval of the supplement under subsection (b) if the investigations described in clause (A) of subsection (b)(1) and relied upon by the applicant for approval of the application were not conducted by or for the applicant and if the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted.

(v) If an application (or supplement to an application) submitted under subsection (b) for a drug, which includes an active ingredient (including any ester or salt of the active ingredient) that has been approved in another application under subsection (b), was approved during the period beginning January 1, 1982, and ending on the date of the enactment of this clause, the Secretary may not make the approval of an application submitted under this subsection and for which the investigations described in clause (A) of subsection (b)(1) and relied upon by the applicant for approval of the application were not conducted by or for the applicant and for which the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted and which refers to the drug for which the subsection (b) application was submitted effective before the expiration of two years from the date of enactment of this clause.

(4) A drug manufactured in a pilot or other small facility may be used to demonstrate the safety and effectiveness of the drug and to obtain approval for the drug prior to manufacture of the drug in a larger facility, unless the Secretary makes a determination that a full scale production facility is necessary to ensure the safety or effectiveness of the drug.

(5)(A) The Secretary may rely upon qualified data summaries to support the approval of a supplemental application, with respect to a qualified indication for a drug, submitted under subsection (b), if such supplemental application complies with subparagraph (B).

19

(B) A supplemental application is eligible for review as described in subparagraph (A) only if—

(i) there is existing data available and acceptable to the Secretary demonstrating the safety of the drug; and

(ii) all data used to develop the qualified data summaries are submitted to the Secretary as part of the supplemental application.

(C) The Secretary shall post on the Internet website of the Food and Drug Administration and update annually—

(i) the number of applications reviewed solely under subparagraph (A) or section 351(a)(2)(E) of the Public Health Service Act;

(ii) the average time for completion of review under subparagraph (A) or section 351(a)(2)(E) of the Public Health Service Act;

(iii) the average time for review of supplemental applications where the Secretary did not use review flexibility under subparagraph (A) or section 351(a)(2)(E) of the Public Health Service Act; and

(iv) the number of applications reviewed under subparagraph (A) or section 351(a)(2)(E) of the Public Health Service Act for which the Secretary made use of full data sets in addition to the qualified data summary.

(D) In this paragraph—

(i) the term "qualified indication" means an indication for a drug that the Secretary determines to be appropriate for summary level review under this paragraph; and

(ii) the term "qualified data summary" means a summary of clinical data that demonstrates the safety and effectiveness of a drug with respect to a qualified indication.

(d) If the Secretary finds, after due notice to the applicant in accordance with subsection (c) and giving him an opportunity for a hearing, in accordance with said subsection, that (1) the investigations, reports of which are required to be submitted to the Secretary pursuant to subsection (b), do not include adequate tests by all methods reasonably applicable to show whether or not such drug is safe for use under the conditions prescribed, recommended, or suggested in the proposed labeling thereof; (2) the results of such tests show that such drug is unsafe for use under such conditions or do not show that such drug is safe for use under such conditions; (3) the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug are inadequate to preserve its identity, strength, quality, and purity; (4) upon the basis of the information submitted to him as part of the application, or upon the basis of any other information before him with respect to such drug, he has insufficient information to determine whether such drug is safe for use under such conditions; or (5) evaluated on the basis of the information submitted to him as part of the application and any other information before him with respect to such drug, there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the proposed labeling thereof; or (6) the application failed to contain the patent information prescribed by subsection (b); or (7) based on a fair evaluation of all material facts, such labeling is

20

false or misleading in any particular; he shall issue an order refusing to approve the application. If, after such notice and opportunity for hearing, the Secretary finds that clauses (1) through (6) do not apply, he shall issue an order approving the application. As used in this subsection and subsection (e), the term "substantial evidence" means evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof. If the Secretary determines, based on relevant science, that data from one adequate and well-controlled clinical investigation and confirmatory evidence (obtained prior to or after such investigation) are sufficient to establish effectiveness, the Secretary may consider such data and evidence to constitute substantial evidence for purposes of the preceding sentence. The Secretary shall implement a structured risk-benefit assessment framework in the new drug approval process to facilitate the balanced consideration of benefits and risks, a consistent and systematic approach to the discussion and regulatory decisionmaking, and the communication of the benefits and risks of new drugs. Nothing in the preceding sentence shall alter the criteria for evaluating an application for marketing approval of a drug.

(e) The Secretary shall, after due notice and opportunity for hearing to the applicant, withdraw approval of an application with respect to any drug under this section if the Secretary finds (1) that clinical or other experience, tests, or other scientific data show that such drug is unsafe for use under the conditions of use upon the basis of which the application was approved; (2) that new evidence of clinical experience, not contained in such application or not available to the Secretary until after such application was approved, or tests by new methods, or tests by methods not deemed reasonably applicable when such application was approved, evaluated together with the evidence available to the Secretary when the application was approved, shows that such drug is not shown to be safe for use under the conditions of use upon the basis of which the application was approved; or (3) on the basis of new information before him with respect to such drug, evaluated together with the evidence available to him when the application was approved, that there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling thereof; or (4) the patent information prescribed by subsection (c) was not filed within thirty days after the receipt of written notice from the Secretary specifying the failure to file such information; or (5) that the application contains any untrue statement of a material fact: *Provided,* That if the Secretary (or in his absence the officer acting as Secretary) finds that there is an imminent hazard to the public health, he may suspend the approval of such application immediately, and give the applicant prompt notice of his action and afford the applicant the opportunity for an expedited hearing under this subsection; but the authority conferred by this proviso to suspend the approval of an application shall not be delegated. The

21

Secretary may also, after due notice and opportunity for hearing to the applicant, withdraw the approval of an application submitted under subsection (b) or (j) with respect to any drug under this section if the Secretary finds (1) that the applicant has failed to establish a system for maintaining required records, or has repeatedly or deliberately failed to maintain such records or to make required reports, in accordance with a regulation or order under subsection (k) or to comply with the notice requirements of section 510(k)(2), or the applicant has refused to permit access to, or copying or verification of, such records as required by paragraph (2) of such subsection; or (2) that on the basis of new information before him, evaluated together with the evidence before him when the application was approved, the methods used in, or the facilities and controls used for, the manufacture, processing, and packing of such drug are inadequate to assure and preserve its identity, strength, quality, and purity and were not made adequate within a reasonable time after receipt of written notice from the Secretary specifying the matter complained of; or (3) that on the basis of new information before him, evaluated together with the evidence before him when the application was approved, the labeling of such drug, based on a fair evaluation of all material facts, is false or misleading in any particular and was not corrected within a reasonable time after receipt of written notice from the Secretary specifying the matter complained of. Any order under this subsection shall state the findings upon which it is based. The Secretary may withdraw the approval of an application submitted under this section, or suspend the approval of such an application, as provided under this subsection, without first ordering the applicant to submit an assessment of the approved risk evaluation and mitigation strategy for the drug under section 505–1(g)(2)(D).

(f) Whenever the Secretary finds that the facts so require, he shall revoke any previous order under subsection (d) or (e) refusing, withdrawing, or suspending approval of an application and shall approve such application or reinstate such approval, as may be appropriate.

(g) Orders of the Secretary issued under this section shall be served (1) in person by any officer or employee of the Department designated by the Secretary or (2) by mailing the order by registered mail or by certified mail addressed to the applicant or respondent at his last-known address in the records of the Secretary.

(h) An appeal may be taken by the applicant from an order of the Secretary refusing or withdrawing approval of an application under this section. Such appeal shall be taken by filing in the United States court of appeals for the circuit wherein such applicant resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia Circuit, within sixty days after the entry of such order, a written petition praying that the order of the Secretary be set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Secretary, or any officer designated by him for that purpose, and thereupon the Secretary shall certify and file in the court the record upon which the order complained of was entered, as provided in section 2112 of title 28, United States Code. Upon the filing of such petition such court shall have exclusive jurisdiction to affirm or set aside such order, except that until the filing of the

22

record the Secretary may modify or set aside his order. No objection to the order of the Secretary shall be considered by the court unless such objection shall have been urged before the Secretary or unless there were reasonable grounds for failure so to do. The finding of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive. If any person shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceeding before the Secretary, the court may order such additional evidence to be taken before the Secretary and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Secretary may modify his findings as to the facts by reason of the additional evidence so taken, and he shall file with the court such modified findings which, if supported by substantial evidence, shall be conclusive, and his recommendation, if any, for the setting aside of the original order. The judgment of the court affirming or setting aside any such order of the Secretary shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28 of the United States Code. The commencement of proceedings under this subsection shall not, unless specifically ordered by the court to the contrary, operate as a stay of the Secretary's order.

(i)(1) The Secretary shall promulgate regulations for exempting from the operation of the foregoing subsections of this section drugs intended solely for investigational use by experts qualified by scientific training and experience to investigate the safety and effectiveness of drugs. Such regulations may, within the discretion of the Secretary, among other conditions relating to the protection of the public health, provide for conditioning such exemption upon—

(A) the submission to the Secretary, before any clinical testing of a new drug is undertaken, of reports, by the manufacturer or the sponsor of the investigation of such drug, or preclinical tests (including tests on animals) of such drug adequate to justify the proposed clinical testing;

(B) the manufacturer or the sponsor of the investigation of a new drug proposed to be distributed to investigators for clinical testing obtaining a signed agreement from each of such investigators that patients to whom the drug is administered will be under his personal supervision, or under the supervision of investigators responsible to him, and that he will not supply such drug to any other investigator, or to clinics, for administration to human beings; and

(C) the establishment and maintenance of such records, and the making of such reports to the Secretary, by the manufacturer or the sponsor of the investigation of such drug, of data (including but not limited to analytical reports by investigators) obtained as the result of such investigational use of such drug, as the Secretary finds will enable him to evaluate the safety and effectiveness of such drug in the event of the filing of an application pursuant to subsection (b); and

(D) the submission to the Secretary by the manufacturer or the sponsor of the investigation of a new drug of a statement of intent regarding whether the manufacturer or

23

sponsor has plans for assessing pediatric safety and efficacy.

(2) Subject to paragraph (3), a clinical investigation of a new drug may begin 30 days after the Secretary has received from the manufacturer or sponsor of the investigation a submission containing such information about the drug and the clinical investigation, including—

(A) information on design of the investigation and adequate reports of basic information, certified by the applicant to be accurate reports, necessary to assess the safety of the drug for use in clinical investigation; and

(B) adequate information on the chemistry and manufacturing of the drug, controls available for the drug, and primary data tabulations from animal or human studies.

(3)(A) At any time, the Secretary may prohibit the sponsor of an investigation from conducting the investigation (referred to in this paragraph as a "clinical hold") if the Secretary makes a determination described in subparagraph (B). The Secretary shall specify the basis for the clinical hold, including the specific information available to the Secretary which served as the basis for such clinical hold, and confirm such determination in writing.

(B) For purposes of subparagraph (A), a determination described in this subparagraph with respect to a clinical hold is that—

(i) the drug involved represents an unreasonable risk to the safety of the persons who are the subjects of the clinical investigation, taking into account the qualifications of the clinical investigators, information about the drug, the design of the clinical investigation, the condition for which the drug is to be investigated, and the health status of the subjects involved; or

(ii) the clinical hold should be issued for such other reasons as the Secretary may by regulation establish (including reasons established by regulation before the date of the enactment of the Food and Drug Administration Modernization Act of 1997).

(C) Any written request to the Secretary from the sponsor of an investigation that a clinical hold be removed shall receive a decision, in writing and specifying the reasons therefor, within 30 days after receipt of such request. Any such request shall include sufficient information to support the removal of such clinical hold.

(4) Regulations under paragraph (1) shall provide that such exemption shall be conditioned upon the manufacturer, or the sponsor of the investigation, requiring that experts using such drugs for investigational purposes certify to such manufacturer or sponsor that they will inform any human beings to whom such drugs, or any controls used in connection therewith, are being administered, or their representatives, that such drugs are being used for investigational purposes and will obtain the consent of such human beings or their representatives, except where it is not feasible, it is contrary to the best interests of such human beings, or the proposed clinical testing poses no more than minimal risk to such human beings and includes appropriate safeguards as prescribed to protect the rights, safety, and welfare of such human beings. Nothing in this subsection shall be construed to require any clinical investigator to submit directly to the Secretary reports on the investigational use of drugs. The Secretary shall update such regula-

24

tions to require inclusion in the informed consent documents and process a statement that clinical trial information for such clinical investigation has been or will be submitted for inclusion in the registry data bank pursuant to subsection (j) of section 402 of the Public Health Service Act.

(j)(1) Any person may file with the Secretary an abbreviated application for the approval of a new drug.

(2)(A) An abbreviated application for a new drug shall contain—

(i) information to show that the conditions of use prescribed, recommended, or suggested in the labeling proposed for the new drug have been previously approved for a drug listed under paragraph (7) (hereinafter in this subsection referred to as a "listed drug");

(ii)(I) if the listed drug referred to in clause (i) has only one active ingredient, information to show that the active ingredient of the new drug is the same as that of the listed drug;

(II) if the listed drug referred to in clause (i) has more than one active ingredient, information to show that the active ingredients of the new drug are the same as those of the listed drug, or

(III) if the listed drug referred to in clause (i) has more than one active ingredient and if one of the active ingredients of the new drug is different and the application is filed pursuant to the approval of a petition filed under subparagraph (C), information to show that the other active ingredients of the new drug are the same as the active ingredients of the listed drug, information to show that the different active ingredient is an active ingredient of a listed drug or of a drug which does not meet the requirements of section 201(p), and such other information respecting the different active ingredient with respect to which the petition was filed as the Secretary may require;

(iii) information to show that the route of administration, the dosage form, and the strength of the new drug are the same as those of the listed drug referred to in clause (i) or, if the route of administration, the dosage form, or the strength of the new drug is different and the application is filed pursuant to the approval of a petition filed under subparagraph (C), such information respecting the route of administration, dosage form, or strength with respect to which the petition was filed as the Secretary may require;

(iv) information to show that the new drug is bioequivalent to the listed drug referred to in clause (i), except that if the application is filed pursuant to the approval of a petition filed under subparagraph (C), information to show that the active ingredients of the new drug are of the same pharmacological or therapeutic class as those of the listed drug referred to in clause (i) and the new drug can be expected to have the same therapeutic effect as the listed drug when administered to patients for a condition of use referred to in clause (i);

(v) information to show that the labeling proposed for the new drug is the same as the labeling approved for the listed drug referred to in clause (i) except for changes required because of differences approved under a petition filed under subparagraph (C) or because the new drug and the listed drug are produced or distributed by different manufacturers;

25

(vi) the items specified in clauses (B) through (F) of subsection (b)(1);

(vii) a certification, in the opinion of the applicant and to the best of his knowledge, with respect to each patent which claims the listed drug referred to in clause (i) or which claims a use for such listed drug for which the applicant is seeking approval under this subsection and for which information is required to be filed under subsection (b) or (c)—

(I) that such patent information has not been filed,

(II) that such patent has expired,

(III) of the date on which such patent will expire, or

(IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted; and

(viii) if with respect to the listed drug referred to in clause (i) information was filed under subsection (b) or (c) for a method of use patent which does not claim a use for which the applicant is seeking approval under this subsection, a statement that the method of use patent does not claim such a use.

The Secretary may not require that an abbreviated application contain information in addition to that required by clauses (i) through (viii).

(B) NOTICE OF OPINION THAT PATENT IS INVALID OR WILL NOT BE INFRINGED.—

(i) AGREEMENT TO GIVE NOTICE.—An applicant that makes a certification described in subparagraph (A)(vii)(IV) shall include in the application a statement that the applicant will give notice as required by this subparagraph.

(ii) TIMING OF NOTICE.—An applicant that makes a certification described in subparagraph (A)(vii)(IV) shall give notice as required under this subparagraph—

(I) if the certification is in the application, not later than 20 days after the date of the postmark on the notice with which the Secretary informs the applicant that the application has been filed; or

(II) if the certification is in an amendment or supplement to the application, at the time at which the applicant submits the amendment or supplement, regardless of whether the applicant has already given notice with respect to another such certification contained in the application or in an amendment or supplement to the application.

(iii) RECIPIENTS OF NOTICE.—An applicant required under this subparagraph to give notice shall give notice to—

(I) each owner of the patent that is the subject of the certification (or a representative of the owner designated to receive such a notice); and

(II) the holder of the approved application under subsection (b) for the drug that is claimed by the patent or a use of which is claimed by the patent (or a representative of the holder designated to receive such a notice).

(iv) CONTENTS OF NOTICE.—A notice required under this subparagraph shall—

(I) state that an application that contains data from bioavailability or bioequivalence studies has been submitted under this subsection for the drug with respect to which

26

the certification is made to obtain approval to engage in the commercial manufacture, use, or sale of the drug before the expiration of the patent referred to in the certification; and

(II) include a detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed.

(C) If a person wants to submit an abbreviated application for a new drug which has a different active ingredient or whose route of administration, dosage form, or strength differ from that of a listed drug, such person shall submit a petition to the Secretary seeking permission to file such an application. The Secretary shall approve or disapprove a petition submitted under this subparagraph within ninety days of the date the petition is submitted. The Secretary shall approve such a petition unless the Secretary finds—

(i) that investigations must be conducted to show the safety and effectiveness of the drug or of any of its active ingredients, the route of administration, the dosage form, or strength which differ from the listed drug; or

(ii) that any drug with a different active ingredient may not be adequately evaluated for approval as safe and effective on the basis of the information required to be submitted in an abbreviated application.

(D)(i) An applicant may not amend or supplement an application to seek approval of a drug referring to a different listed drug from the listed drug identified in the application as submitted to the Secretary.

(ii) With respect to the drug for which an application is submitted, nothing in this subsection prohibits an applicant from amending or supplementing the application to seek approval of a different strength.

(iii) Within 60 days after the date of the enactment of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, the Secretary shall issue guidance defining the term "listed drug" for purposes of this subparagraph.

(3)(A) The Secretary shall issue guidance for the individuals who review applications submitted under paragraph (1), which shall relate to promptness in conducting the review, technical excellence, lack of bias and conflict of interest, and knowledge of regulatory and scientific standards, and which shall apply equally to all individuals who review such applications.

(B) The Secretary shall meet with a sponsor of an investigation or an applicant for approval for a drug under this subsection if the sponsor or applicant makes a reasonable written request for a meeting for the purpose of reaching agreement on the design and size of bioavailability and bioequivalence studies needed for approval of such application. The sponsor or applicant shall provide information necessary for discussion and agreement on the design and size of such studies. Minutes of any such meeting shall be prepared by the Secretary and made available to the sponsor or applicant.

(C) Any agreement regarding the parameters of design and size of bioavailability and bioequivalence studies of a drug under this paragraph that is reached between the Secretary and a sponsor or applicant shall be reduced to writing and made part of the admin-

27

istrative record by the Secretary. Such agreement shall not be changed after the testing begins, except—

(i) with the written agreement of the sponsor or applicant; or

(ii) pursuant to a decision, made in accordance with subparagraph (D) by the director of the reviewing division, that a substantial scientific issue essential to determining the safety or effectiveness of the drug has been identified after the testing has begun.

(D) A decision under subparagraph (C)(ii) by the director shall be in writing and the Secretary shall provide to the sponsor or applicant an opportunity for a meeting at which the director and the sponsor or applicant will be present and at which the director will document the scientific issue involved.

(E) The written decisions of the reviewing division shall be binding upon, and may not directly or indirectly be changed by, the field or compliance office personnel unless such field or compliance office personnel demonstrate to the reviewing division why such decision should be modified.

(F) No action by the reviewing division may be delayed because of the unavailability of information from or action by field personnel unless the reviewing division determines that a delay is necessary to assure the marketing of a safe and effective drug.

(G) For purposes of this paragraph, the reviewing division is the division responsible for the review of an application for approval of a drug under this subsection (including scientific matters, chemistry, manufacturing, and controls).

(4) Subject to paragraph (5), the Secretary shall approve an application for a drug unless the Secretary finds—

(A) the methods used in, or the facilities and controls used for, the manufacture, processing, and packing of the drug are inadequate to assure and preserve its identity, strength, quality, and purity;

(B) information submitted with the application is insufficient show that each of the proposed conditions of use have been previously approved for the listed drug referred to in the application;

(C)(i) if the listed drug has only one active ingredient, information submitted with the application is insufficient to show that the active ingredient is the same as that of the listed drug;

(ii) if the listed drug has more than one active ingredient, information submitted with the application is insufficient to show that the active ingredients are the same as the active ingredients of the listed drug, or

(iii) if the listed drug has more than one active ingredient and if the application is for a drug which has an active ingredient different from the listed drug, information submitted with the application is insufficient to show—

(I) that the other active ingredients are the same as the active ingredients of the listed drug, or

(II) that the different active ingredient is an active ingredient of a listed drug or a drug which does not meet the requirements of section 201(p),

28

or no petition to file an application for the drug with the different ingredient was approved under paragraph (2)(C);

(D)(i) if the application is for a drug whose route of administration, dosage form, or strength of the drug is the same as the route of administration, dosage form, or strength of the listed drug referred to in the application, information submitted in the application is insufficient to show that the route of administration, dosage form, or strength is the same as that of the listed drug, or

(ii) if the application is for a drug whose route of administration, dosage form, or strength of the drug is different from that of the listed drug referred to in the application, no petition to file an application for the drug with the different route of administration, dosage form, or strength was approved under paragraph (2)(C);

(E) if the application was filed pursuant to the approval of a petition under paragraph (2)(C), the application did not contain the information required by the Secretary respecting the active ingredient, route of administration, dosage form, or strength which is not the same;

(F) information submitted in the application is insufficient to show that the drug is bioequivalent to the listed drug referred to in the application or, if the application was filed pursuant to a petition approved under paragraph (2)(C), information submitted in the application is insufficient to show that the active ingredients of the new drug are of the same pharmacological or therapeutic class as those of the listed drug referred to in paragraph (2)(A)(i) and that the new drug can be expected to have the same therapeutic effect as the listed drug when administered to patients for a condition of use referred to in such paragraph;

(G) information submitted in the application is insufficient to show that the labeling proposed for the drug is the same as the labeling approved for the listed drug referred to in the application except for changes required because of differences approved under a petition filed under paragraph (2)(C) or because the drug and the listed drug are produced or distributed by different manufacturers;

(H) information submitted in the application or any other information available to the Secretary shows that (i) the inactive ingredients of the drug are unsafe for use under the conditions prescribed, recommended, or suggested in the labeling proposed for the drug, or (ii) the composition of the drug is unsafe under such conditions because of the type or quantity of inactive ingredients included or the manner in which the inactive ingredients are included;

(I) the approval under subsection (c) of the listed drug referred to in the application under this subsection has been withdrawn or suspended for grounds described in the first sentence of subsection (e), the Secretary has published a notice of opportunity for hearing to withdraw approval of the listed drug under subsection (c) for grounds described in the first sentence of subsection (e), the approval under this subsection of the listed drug referred to in the application under this subsection has been withdrawn or suspended under paragraph (6), or the Sec-

29

retary has determined that the listed drug has been withdrawn from sale for safety or effectiveness reasons;

(J) the application does not meet any other requirement of paragraph (2)(A); or

(K) the application contains an untrue statement of material fact.

(5)(A) Within one hundred and eighty days of the initial receipt of an application under paragraph (2) or within such additional period as may be agreed upon by the Secretary and the applicant, the Secretary shall approve or disapprove the application.

(B) The approval of an application submitted under paragraph (2) shall be made effective on the last applicable date determined by applying the following to each certification made under paragraph (2)(A)(vii):

(i) If the applicant only made a certification described in subclause (I) or (II) of paragraph (2)(A)(vii) or in both such subclauses, the approval may be made effective immediately.

(ii) If the applicant made a certification described in subclause (III) of paragraph (2)(A)(vii), the approval may be made effective on the date certified under subclause (III).

(iii) If the applicant made a certification described in subclause (IV) of paragraph (2)(A)(vii), the approval shall be made effective immediately unless, before the expiration of 45 days after the date on which the notice described in paragraph (2)(B) is received, an action is brought for infringement of the patent that is the subject of the certification and for which information was submitted to the Secretary under subsection (b)(1) or (c)(2) before the date on which the application (excluding an amendment or supplement to the application), which the Secretary later determines to be substantially complete, was submitted. If such an action is brought before the expiration of such days, the approval shall be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under paragraph (2)(B)(i) or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action, except that—

(I) if before the expiration of such period the district court decides that the patent is invalid or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity), the approval shall be made effective on—

(aa) the date on which the court enters judgment reflecting the decision; or

(bb) the date of a settlement order or consent decree signed and entered by the court stating that the patent that is the subject of the certification is invalid or not infringed;

(II) if before the expiration of such period the district court decides that the patent has been infringed—

(aa) if the judgment of the district court is appealed, the approval shall be made effective on—

(AA) the date on which the court of appeals decides that the patent is invalid or not infringed (including any substantive determination that

30

there is no cause of action for patent infringement or invalidity); or

(BB) the date of a settlement order or consent decree signed and entered by the court of appeals stating that the patent that is the subject of the certification is invalid or not infringed; or

(bb) if the judgment of the district court is not appealed or is affirmed, the approval shall be made effective on the date specified by the district court in a court order under section 271(e)(4)(A) of title 35, United States Code;

(III) if before the expiration of such period the court grants a preliminary injunction prohibiting the applicant from engaging in the commercial manufacture or sale of the drug until the court decides the issues of patent validity and infringement and if the court decides that such patent is invalid or not infringed, the approval shall be made effective as provided in subclause (I); or

(IV) if before the expiration of such period the court grants a preliminary injunction prohibiting the applicant from engaging in the commercial manufacture or sale of the drug until the court decides the issues of patent validity and infringement and if the court decides that such patent has been infringed, the approval shall be made effective as provided in subclause (II).

In such an action, each of the parties shall reasonably cooperate in expediting the action.

(iv) 180-DAY EXCLUSIVITY PERIOD.—

(I) EFFECTIVENESS OF APPLICATION.—Subject to subparagraph (D), if the application contains a certification described in paragraph (2)(A)(vii)(IV) and is for a drug for which a first applicant has submitted an application containing such a certification, the application shall be made effective on the date that is 180 days after the date of the first commercial marketing of the drug (including the commercial marketing of the listed drug) by any first applicant.

(II) DEFINITIONS.—In this paragraph:

(aa) 180-DAY EXCLUSIVITY PERIOD.—The term "180-day exclusivity period" means the 180-day period ending on the day before the date on which an application submitted by an applicant other than a first applicant could become effective under this clause.

(bb) FIRST APPLICANT.—As used in this subsection, the term "first applicant" means an applicant that, on the first day on which a substantially complete application containing a certification described in paragraph (2)(A)(vii)(IV) is submitted for approval of a drug, submits a substantially complete application that contains and lawfully maintains a certification described in paragraph (2)(A)(vii)(IV) for the drug.

(cc) SUBSTANTIALLY COMPLETE APPLICATION.—As used in this subsection, the term "substantially complete application" means an application under this subsection that on its face is sufficiently complete to

31

permit a substantive review and contains all the information required by paragraph (2)(A).

(dd) TENTATIVE APPROVAL.—

(AA) IN GENERAL.—The term "tentative approval" means notification to an applicant by the Secretary that an application under this subsection meets the requirements of paragraph (2)(A), but cannot receive effective approval because the application does not meet the requirements of this subparagraph, there is a period of exclusivity for the listed drug under subparagraph (F) or section 505A, or there is a 7-year period of exclusivity for the listed drug under section 527.

(BB) LIMITATION.—A drug that is granted tentative approval by the Secretary is not an approved drug and shall not have an effective approval until the Secretary issues an approval after any necessary additional review of the application.

(v) 180-DAY EXCLUSIVITY PERIOD FOR COMPETITIVE GENERIC THERAPIES.—

(I) EFFECTIVENESS OF APPLICATION.—Subject to subparagraph (D)(iv), if the application is for a drug that is the same as a competitive generic therapy for which any first approved applicant has commenced commercial marketing, the application shall be made effective on the date that is 180 days after the date of the first commercial marketing of the competitive generic therapy (including the commercial marketing of the listed drug) by any first approved applicant.

(II) LIMITATION.—The exclusivity period under subclause (I) shall not apply with respect to a competitive generic therapy that has previously received an exclusivity period under subclause (I).

(III) DEFINITIONS.—In this clause and subparagraph (D)(iv):

(aa) The term "competitive generic therapy" means a drug—

(AA) that is designated as a competitive generic therapy under section 506H; and

(BB) for which there are no unexpired patents or exclusivities on the list of products described in section 505(j)(7)(A) at the time of submission.

(bb) The term "first approved applicant" means any applicant that has submitted an application that—

(AA) is for a competitive generic therapy that is approved on the first day on which any application for such competitive generic therapy is approved;

(BB) is not eligible for a 180-day exclusivity period under clause (iv) for the drug that is the subject of the application for the competitive generic therapy; and

(CC) is not for a drug for which all drug versions have forfeited eligibility for a 180-day ex-

32

clusivity period under clause (iv) pursuant to subparagraph (D).

(C) CIVIL ACTION TO OBTAIN PATENT CERTAINTY.—

(i) DECLARATORY JUDGMENT ABSENT INFRINGEMENT ACTION.—

(I) IN GENERAL.—No action may be brought under section 2201 of title 28, United States Code, by an applicant under paragraph (2) for a declaratory judgment with respect to a patent which is the subject of the certification referred to in subparagraph (B)(iii) unless—

(aa) the 45-day period referred to in such subparagraph has expired;

(bb) neither the owner of such patent nor the holder of the approved application under subsection (b) for the drug that is claimed by the patent or a use of which is claimed by the patent brought a civil action against the applicant for infringement of the patent before the expiration of such period; and

(cc) in any case in which the notice provided under paragraph (2)(B) relates to noninfringement, the notice was accompanied by a document described in subclause (III).

(II) FILING OF CIVIL ACTION.—If the conditions described in items (aa), (bb), and as applicable, (cc) of subclause (I) have been met, the applicant referred to in such subclause may, in accordance with section 2201 of title 28, United States Code, bring a civil action under such section against the owner or holder referred to in such subclause (but not against any owner or holder that has brought such a civil action against the applicant, unless that civil action was dismissed without prejudice) for a declaratory judgment that the patent is invalid or will not be infringed by the drug for which the applicant seeks approval, except that such civil action may be brought for a declaratory judgment that the patent will not be infringed only in a case in which the condition described in subclause (I)(cc) is applicable. A civil action referred to in this subclause shall be brought in the judicial district where the defendant has its principal place of business or a regular and established place of business.

(III) OFFER OF CONFIDENTIAL ACCESS TO APPLICATION.—For purposes of subclause (I)(cc), the document described in this subclause is a document providing an offer of confidential access to the application that is in the custody of the applicant under paragraph (2) for the purpose of determining whether an action referred to in subparagraph (B)(iii) should be brought. The document providing the offer of confidential access shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and

33

other confidential business information. A request for access to an application under an offer of confidential access shall be considered acceptance of the offer of confidential access with the restrictions as to persons entitled to access, and on the use and disposition of any information accessed, contained in the offer of confidential access, and those restrictions and other terms of the offer of confidential access shall be considered terms of an enforceable contract. Any person provided an offer of confidential access shall review the application for the sole and limited purpose of evaluating possible infringement of the patent that is the subject of the certification under paragraph (2)(A)(vii)(IV) and for no other purpose, and may not disclose information of no relevance to any issue of patent infringement to any person other than a person provided an offer of confidential access. Further, the application may be redacted by the applicant to remove any information of no relevance to any issue of patent infringement.

(ii) COUNTERCLAIM TO INFRINGEMENT ACTION.—

(I) IN GENERAL.—If an owner of the patent or the holder of the approved application under subsection (b) for the drug that is claimed by the patent or a use of which is claimed by the patent brings a patent infringement action against the applicant, the applicant may assert a counterclaim seeking an order requiring the holder to correct or delete the patent information submitted by the holder under subsection (b) or (c) on the ground that the patent does not claim either—

(aa) the drug for which the application was approved; or

(bb) an approved method of using the drug.

(II) NO INDEPENDENT CAUSE OF ACTION.—Subclause (I) does not authorize the assertion of a claim described in subclause (I) in any civil action or proceeding other than a counterclaim described in subclause (I).

(iii) NO DAMAGES.—An applicant shall not be entitled to damages in a civil action under clause (i) or a counterclaim under clause (ii).

(D) FORFEITURE OF 180-DAY EXCLUSIVITY PERIOD.—

(i) DEFINITION OF FORFEITURE EVENT.—In this subparagraph, the term "forfeiture event", with respect to an application under this subsection, means the occurrence of any of the following:

(I) FAILURE TO MARKET.—The first applicant fails to market the drug by the later of—

(aa) the earlier of the date that is—

(AA) 75 days after the date on which the approval of the application of the first applicant is made effective under subparagraph (B)(iii); or

(BB) 30 months after the date of submission of the application of the first applicant; or

34

(bb) with respect to the first applicant or any other applicant (which other applicant has received tentative approval), the date that is 75 days after the date as of which, as to each of the patents with respect to which the first applicant submitted and lawfully maintained a certification qualifying the first applicant for the 180-day exclusivity period under subparagraph (B)(iv), at least 1 of the following has occurred:

(AA) In an infringement action brought against that applicant with respect to the patent or in a declaratory judgment action brought by that applicant with respect to the patent, a court enters a final decision from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken that the patent is invalid or not infringed.

(BB) In an infringement action or a declaratory judgment action described in subitem (AA), a court signs a settlement order or consent decree that enters a final judgment that includes a finding that the patent is invalid or not infringed.

(CC) The patent information submitted under subsection (b) or (c) is withdrawn by the holder of the application approved under subsection (b).

(II) WITHDRAWAL OF APPLICATION.—The first applicant withdraws the application or the Secretary considers the application to have been withdrawn as a result of a determination by the Secretary that the application does not meet the requirements for approval under paragraph (4).

(III) AMENDMENT OF CERTIFICATION.—The first applicant amends or withdraws the certification for all of the patents with respect to which that applicant submitted a certification qualifying the applicant for the 180-day exclusivity period.

(IV) FAILURE TO OBTAIN TENTATIVE APPROVAL.—The first applicant fails to obtain tentative approval of the application within 30 months after the date on which the application is filed, unless the failure is caused by a change in or a review of the requirements for approval of the application imposed after the date on which the application is filed.

(V) AGREEMENT WITH ANOTHER APPLICANT, THE LISTED DRUG APPLICATION HOLDER, OR A PATENT OWNER.— The first applicant enters into an agreement with another applicant under this subsection for the drug, the holder of the application for the listed drug, or an owner of the patent that is the subject of the certification under paragraph (2)(A)(vii)(IV), the Federal Trade Commission or the Attorney General files a complaint, and there is a final decision of the Federal

35

Trade Commission or the court with regard to the complaint from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken that the agreement has violated the antitrust laws (as defined in section 1 of the Clayton Act (15 U.S.C. 12), except that the term includes section 5 of the Federal Trade Commission Act (15 U.S.C. 45) to the extent that that section applies to unfair methods of competition).

(VI) EXPIRATION OF ALL PATENTS.—All of the patents as to which the applicant submitted a certification qualifying it for the 180-day exclusivity period have expired.

(ii) FORFEITURE.—The 180-day exclusivity period described in subparagraph (B)(iv) shall be forfeited by a first applicant if a forfeiture event occurs with respect to that first applicant.

(iii) SUBSEQUENT APPLICANT.—If all first applicants forfeit the 180-day exclusivity period under clause (ii)—

(I) approval of any application containing a certification described in paragraph (2)(A)(vii)(IV) shall be made effective in accordance with subparagraph (B)(iii); and

(II) no applicant shall be eligible for a 180-day exclusivity period.

(iv) SPECIAL FORFEITURE RULE FOR COMPETITIVE GENERIC THERAPY.—The 180-day exclusivity period described in subparagraph (B)(v) shall be forfeited by a first approved applicant if the applicant fails to market the competitive generic therapy within 75 days after the date on which the approval of the first approved applicant's application for the competitive generic therapy is made effective.

(E) If the Secretary decides to disapprove an application, the Secretary shall give the applicant notice of an opportunity for a hearing before the Secretary on the question of whether such application is approvable. If the applicant elects to accept the opportunity for hearing by written request within thirty days after such notice, such hearing shall commence not more than ninety days after the expiration of such thirty days unless the Secretary and the applicant otherwise agree. Any such hearing shall thereafter be conducted on an expedited basis and the Secretary's order thereon shall be issued within ninety days after the date fixed by the Secretary for filing final briefs.

(F)(i) If an application (other than an abbreviated new drug application) submitted under subsection (b) for a drug, no active ingredient (including any ester or salt of the active ingredient) of which has been approved in any other application under subsection (b), was approved during the period beginning January 1, 1982, and ending on the date of the enactment of this subsection, the Secretary may not make the approval of an application submitted under this subsection which refers to the drug for which the subsection (b) application was submitted effective before the expiration of ten years from the date of the approval of the application under subsection (b).

36

(ii) If an application submitted under subsection (b) for a drug, no active ingredient (including any ester or salt of the active ingredient) of which has been approved in any other application under subsection (b), is approved after the date of the enactment of this subsection, no application may be submitted under this subsection which refers to the drug for which the subsection (b) application was submitted before the expiration of five years from the date of the approval of the application under subsection (b), except that such an application may be submitted under this subsection after the expiration of four years from the date of the approval of the subsection (b) application if it contains a certification of patent invalidity or noninfringement described in subclause (IV) of paragraph (2)(A)(vii). The approval of such an application shall be made effective in accordance with subparagraph (B) except that, if an action for patent infringement is commenced during the one-year period beginning forty-eight months after the date of the approval of the subsection (b) application, the thirty-month period referred to in subparagraph (B)(iii) shall be extended by such amount of time (if any) which is required for seven and one-half years to have elapsed from the date of approval of the subsection (b) application.

(iii) If an application submitted under subsection (b) for a drug, which includes an active ingredient (including any ester or salt of the active ingredient) that has been approved in another application approved under subsection (b), is approved after the date of enactment of this subsection and if such application contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the application and conducted or sponsored by the applicant, the Secretary may not make the approval of an application submitted under this subsection for the conditions of approval of such drug in the subsection (b) application effective before the expiration of three years from the date of the approval of the application under subsection (b) for such drug.

(iv) If a supplement to an application approved under subsection (b) is approved after the date of enactment of this subsection and the supplement contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the supplement and conducted or sponsored by the person submitting the supplement, the Secretary may not make the approval of an application submitted under this subsection for a change approved in the supplement effective before the expiration of three years from the date of the approval of the supplement under subsection (b).

(v) If an application (or supplement to an application) submitted under subsection (b) for a drug, which includes an active ingredient (including any ester or salt of the active ingredient) that has been approved in another application approved under subsection (b), was approved during the period beginning January 1, 1982, and ending on the date of the enactment of this subsection, the Secretary may not make the approval of an application submitted under this subsection which refers to the drug for which the subsection (b) application was submitted or which refers to a change approved in a supplement to the subsection (b) application effective before the expiration of two years from the date of enactment of this subsection.

(6) If a drug approved under this subsection refers in its approved application to a drug the approval of which was withdrawn

37

or suspended for grounds described in the first sentence of subsection (e) or was withdrawn or suspended under this paragraph or which, as determined by the Secretary, has been withdrawn from sale for safety or effectiveness reasons, the approval of the drug under this subsection shall be withdrawn or suspended—

(A) for the same period as the withdrawal or suspension under subsection (e) or this paragraph, or

(B) if the listed drug has been withdrawn from sale, for the period of withdrawal from sale or, if earlier, the period ending on the date the Secretary determines that the withdrawal from sale is not for safety or effectiveness reasons.

(7)(A)(i) Within sixty days of the date of the enactment of this subsection, the Secretary shall publish and make available to the public—

(I) a list in alphabetical order of the official and proprietary name of each drug which has been approved for safety and effectiveness under subsection (c) before the date of the enactment of this subsection;

(II) the date of approval if the drug is approved after 1981 and the number of the application which was approved; and

(III) whether in vitro or in vivo bioequivalence studies, or both such studies, are required for applications filed under this subsection which will refer to the drug published.

(ii) Every thirty days after the publication of the first list under clause (i) the Secretary shall revise the list to include each drug which has been approved for safety and effectiveness under subsection (c) or approved under this subsection during the thirty-day period.

(iii) When patent information submitted under subsection (b) or (c) respecting a drug included on the list is to be published by the Secretary, the Secretary shall, in revisions made under clause (ii), include such information for such drug.

*(iv) For each drug included on the list, the Secretary shall specify each exclusivity period that is applicable and has not concluded under—*

*(I) clause (ii), (iii), or (iv) of subsection (c)(3)(E) of this section;*

*(II) clause (iv) or (v) of paragraph (5)(B) of this subsection;*

*(III) clause (ii), (iii), or (iv) of paragraph (5)(F) of this subsection;*

*(IV) section 505A;*

*(V) section 505E; or*

*(VI) section 527(a).*

(B) A drug approved for safety and effectiveness under subsection (c) or approved under this subsection shall, for purposes of this subsection, be considered to have been published under subparagraph (A) on the date of its approval or the date of enactment, whichever is later.

(C) If the approval of a drug was withdrawn or suspended for grounds described in the first sentence of subsection (e) or was withdrawn or suspended under paragraph (6) or if the Secretary determines that a drug has been withdrawn from sale for safety or effectiveness reasons, it may not be published in the list under subparagraph (A) or, if the withdrawal or suspension occurred after its

38

publication in such list, it shall be immediately removed from such list—

  (i) for the same period as the withdrawal or suspension under subsection (e) or paragraph (6), or

  (ii) if the listed drug has been withdrawn from sale, for the period of withdrawal from sale or, if earlier, the period ending on the date the Secretary determines that the withdrawal from sale is not for safety or effectiveness reasons.

A notice of the removal shall be published in the Federal Register.

 *(D)(i) The holder of an application approved under subsection (c) for a drug on the list shall notify within 14 days the Secretary in writing if either of the following occurs:*

  *(I) The Patent Trial and Appeals Board issues a decision from which no appeal has been or can be taken that a patent for such drug is invalid.*

  *(II) A court issues a decision from which no appeal has been or can be taken that a patent for such drug is invalid.*

 *(ii) The holder of an approved application shall include in any notification under clause (i) a copy of the decision described in subclause (I) or (II) of clause (i).*

 *(iii) The Secretary shall remove from the list any patent that is determined to be invalid in a decision described in subclause (I) or (II) of clause (i)—*

  *(I) promptly; but*

  *(II) not before the expiration of any 180-day exclusivity period under paragraph (5)(B)(iv) that relies on a certification described in paragraph (2)(A)(vii)(IV) that such patent was invalid.*

 (8) For purposes of this subsection:

  (A)(i) The term "bioavailability" means the rate and extent to which the active ingredient or therapeutic ingredient is absorbed from a drug and becomes available at the site of drug action.

  (ii) For a drug that is not intended to be absorbed into the bloodstream, the Secretary may assess bioavailability by scientifically valid measurements intended to reflect the rate and extent to which the active ingredient or therapeutic ingredient becomes available at the site of drug action.

  (B) A drug shall be considered to be bioequivalent to a listed drug if—

   (i) the rate and extent of absorption of the drug do not show a significant difference from the rate and extent of absorption of the listed drug when administered at the same molar dose of the therapeutic ingredient under similar experimental conditions in either a single dose or multiple doses; or

   (ii) the extent of absorption of the drug does not show a significant difference from the extent of absorption of the listed drug when administered at the same molar dose of the therapeutic ingredient under similar experimental conditions in either a single dose or multiple doses and the difference from the listed drug in the rate of absorption of the drug is intentional, is reflected in its proposed labeling, is not essential to the attainment of effective body drug

39

concentrations on chronic use, and is considered medically insignificant for the drug.

(C) For a drug that is not intended to be absorbed into the bloodstream, the Secretary may establish alternative, scientifically valid methods to show bioequivalence if the alternative methods are expected to detect a significant difference between the drug and the listed drug in safety and therapeutic effect.

(9) The Secretary shall, with respect to each application submitted under this subsection, maintain a record of—

(A) the name of the applicant,

(B) the name of the drug covered by the application,

(C) the name of each person to whom the review of the chemistry of the application was assigned and the date of such assignment, and

(D) the name of each person to whom the bioequivalence review for such application was assigned and the date of such assignment.

The information the Secretary is required to maintain under this paragraph with respect to an application submitted under this subsection shall be made available to the public after the approval of such application.

(10)(A) If the proposed labeling of a drug that is the subject of an application under this subsection differs from the listed drug due to a labeling revision described under clause (i), the drug that is the subject of such application shall, notwithstanding any other provision of this Act, be eligible for approval and shall not be considered misbranded under section 502 if—

(i) the application is otherwise eligible for approval under this subsection but for expiration of patent, an exclusivity period, or of a delay in approval described in paragraph (5)(B)(iii), and a revision to the labeling of the listed drug has been approved by the Secretary within 60 days of such expiration;

(ii) the labeling revision described under clause (i) does not include a change to the "Warnings" section of the labeling;

(iii) the sponsor of the application under this subsection agrees to submit revised labeling of the drug that is the subject of such application not later than 60 days after the notification of any changes to such labeling required by the Secretary; and

(iv) such application otherwise meets the applicable requirements for approval under this subsection.

(B) If, after a labeling revision described in subparagraph (A)(i), the Secretary determines that the continued presence in interstate commerce of the labeling of the listed drug (as in effect before the revision described in subparagraph (A)(i)) adversely impacts the safe use of the drug, no application under this subsection shall be eligible for approval with such labeling.

(11)(A) Subject to subparagraph (B), the Secretary shall prioritize the review of, and act within 8 months of the date of the submission of, an original abbreviated new drug application submitted for review under this subsection that is for a drug—

(i) for which there are not more than 3 approved drug products listed under paragraph (7) and for which there are no blocking patents and exclusivities; or

(ii) that has been included on the list under section 506E.

40

(B) To qualify for priority review under this paragraph, not later than 60 days prior to the submission of an application described in subparagraph (A) or that the Secretary may prioritize pursuant to subparagraph (D), the applicant shall provide complete, accurate information regarding facilities involved in manufacturing processes and testing of the drug that is the subject of the application, including facilities in corresponding Type II active pharmaceutical ingredients drug master files referenced in an application and sites or organizations involved in bioequivalence and clinical studies used to support the application, to enable the Secretary to make a determination regarding whether an inspection of a facility is necessary. Such information shall include the relevant (as determined by the Secretary) sections of such application, which shall be unchanged relative to the date of the submission of such application, except to the extent that a change is made to such information to exclude a facility that was not used to generate data to meet any application requirements for such submission and that is not the only facility intended to conduct one or more unit operations in commercial production. Information provided by an applicant under this subparagraph shall not be considered the submission of an application under this subsection.

(C) The Secretary may expedite an inspection or reinspection under section 704 of an establishment that proposes to manufacture a drug described in subparagraph (A).

(D) Nothing in this paragraph shall prevent the Secretary from prioritizing the review of other applications as the Secretary determines appropriate.

(12) The Secretary shall publish on the internet website of the Food and Drug Administration, and update at least once every 6 months, a list of all drugs approved under subsection (c) for which all patents and periods of exclusivity under this Act have expired and for which no application has been approved under this subsection.

(13) Upon the request of an applicant regarding one or more specified pending applications under this subsection, the Secretary shall, as appropriate, provide review status updates indicating the categorical status of the applications by each relevant review discipline.

(k)(1) In the case of any drug for which an approval of an application filed under subsection (b) or (j) is in effect, the applicant shall establish and maintain such records, and make such reports to the Secretary, of data relating to clinical experience and other data or information, received or otherwise obtained by such applicant with respect to such drug, as the Secretary may by general regulation, or by order with respect to such application, prescribe on the basis of a finding that such records and reports are necessary in order to enable the Secretary to determine, or facilitate a determination, whether there is or may be ground for invoking subsection (e) of this section. Regulations and orders issued under this subsection and under subsection (i) shall have due regard for the professional ethics of the medical profession and the interests of patients and shall provide, where the Secretary deems it to be appropriate, for the examination, upon request, by the persons to whom such regulations or orders are applicable, of similar information received or otherwise obtained by the Secretary.

41

(2) Every person required under this section to maintain records, and every person in charge or custody thereof, shall, upon request of an officer or employee designated by the Secretary, permit such officer or employee at all reasonable times to have access to and copy and verify such records.

(3) ACTIVE POSTMARKET RISK IDENTIFICATION.—

(A) DEFINITION.—In this paragraph, the term "data" refers to information with respect to a drug approved under this section or under section 351 of the Public Health Service Act, including claims data, patient survey data, standardized analytic files that allow for the pooling and analysis of data from disparate data environments, and any other data deemed appropriate by the Secretary.

(B) DEVELOPMENT OF POSTMARKET RISK IDENTIFICATION AND ANALYSIS METHODS.—The Secretary shall, not later than 2 years after the date of the enactment of the Food and Drug Administration Amendments Act of 2007, in collaboration with public, academic, and private entities—

(i) develop methods to obtain access to disparate data sources including the data sources specified in subparagraph (C);

(ii) develop validated methods for the establishment of a postmarket risk identification and analysis system to link and analyze safety data from multiple sources, with the goals of including, in aggregate—

(I) at least 25,000,000 patients by July 1, 2010; and

(II) at least 100,000,000 patients by July 1, 2012; and

(iii) convene a committee of experts, including individuals who are recognized in the field of protecting data privacy and security, to make recommendations to the Secretary on the development of tools and methods for the ethical and scientific uses for, and communication of, postmarketing data specified under subparagraph (C), including recommendations on the development of effective research methods for the study of drug safety questions.

(C) ESTABLISHMENT OF THE POSTMARKET RISK IDENTIFICATION AND ANALYSIS SYSTEM.—

(i) IN GENERAL.—The Secretary shall, not later than 1 year after the development of the risk identification and analysis methods under subparagraph (B), establish and maintain procedures—

(I) for risk identification and analysis based on electronic health data, in compliance with the regulations promulgated under section 264(c) of the Health Insurance Portability and Accountability Act of 1996, and in a manner that does not disclose individually identifiable health information in violation of paragraph (4)(B);

(II) for the reporting (in a standardized form) of data on all serious adverse drug experiences (as defined in section 505–1(b)) submitted to the Secretary under paragraph (1), and those adverse

42

events submitted by patients, providers, and drug sponsors, when appropriate;

(III) to provide for active adverse event surveillance using the following data sources, as available:

(aa) Federal health-related electronic data (such as data from the Medicare program and the health systems of the Department of Veterans Affairs);

(bb) private sector health-related electronic data (such as pharmaceutical purchase data and health insurance claims data); and

(cc) other data as the Secretary deems necessary to create a robust system to identify adverse events and potential drug safety signals;

(IV) to identify certain trends and patterns with respect to data accessed by the system;

(V) to provide regular reports to the Secretary concerning adverse event trends, adverse event patterns, incidence and prevalence of adverse events, and other information the Secretary determines appropriate, which may include data on comparative national adverse event trends; and

(VI) to enable the program to export data in a form appropriate for further aggregation, statistical analysis, and reporting.

(ii) TIMELINESS OF REPORTING.—The procedures established under clause (i) shall ensure that such data are accessed, analyzed, and reported in a timely, routine, and systematic manner, taking into consideration the need for data completeness, coding, cleansing, and standardized analysis and transmission.

(iii) PRIVATE SECTOR RESOURCES.—To ensure the establishment of the active postmarket risk identification and analysis system under this subsection not later than 1 year after the development of the risk identification and analysis methods under subparagraph (B), as required under clause (i), the Secretary may, on a temporary or permanent basis, implement systems or products developed by private entities.

(iv) COMPLEMENTARY APPROACHES.—To the extent the active postmarket risk identification and analysis system under this subsection is not sufficient to gather data and information relevant to a priority drug safety question, the Secretary shall develop, support, and participate in complementary approaches to gather and analyze such data and information, including—

(I) approaches that are complementary with respect to assessing the safety of use of a drug in domestic populations not included, or underrepresented, in the trials used to approve the drug (such as older people, people with comorbidities, pregnant women, or children); and

43

(II) existing approaches such as the Vaccine Adverse Event Reporting System and the Vaccine Safety Datalink or successor databases.

(v) AUTHORITY FOR CONTRACTS.—The Secretary may enter into contracts with public and private entities to fulfill the requirements of this subparagraph.

(4) ADVANCED ANALYSIS OF DRUG SAFETY DATA.—

(A) PURPOSE.—The Secretary shall establish collaborations with public, academic, and private entities, which may include the Centers for Education and Research on Therapeutics under section 912 of the Public Health Service Act, to provide for advanced analysis of drug safety data described in paragraph (3)(C) and other information that is publicly available or is provided by the Secretary, in order to—

(i) improve the quality and efficiency of postmarket drug safety risk-benefit analysis;

(ii) provide the Secretary with routine access to outside expertise to study advanced drug safety questions; and

(iii) enhance the ability of the Secretary to make timely assessments based on drug safety data.

(B) PRIVACY.—Such analysis shall not disclose individually identifiable health information when presenting such drug safety signals and trends or when responding to inquiries regarding such drug safety signals and trends.

(C) PUBLIC PROCESS FOR PRIORITY QUESTIONS.—At least biannually, the Secretary shall seek recommendations from the Drug Safety and Risk Management Advisory Committee (or any successor committee) and from other advisory committees, as appropriate, to the Food and Drug Administration on—

(i) priority drug safety questions; and

(ii) mechanisms for answering such questions, including through—

(I) active risk identification under paragraph (3); and

(II) when such risk identification is not sufficient, postapproval studies and clinical trials under subsection (o)(3).

(D) PROCEDURES FOR THE DEVELOPMENT OF DRUG SAFETY COLLABORATIONS.—

(i) IN GENERAL.—Not later than 180 days after the date of the establishment of the active postmarket risk identification and analysis system under this subsection, the Secretary shall establish and implement procedures under which the Secretary may routinely contract with one or more qualified entities to—

(I) classify, analyze, or aggregate data described in paragraph (3)(C) and information that is publicly available or is provided by the Secretary;

(II) allow for prompt investigation of priority drug safety questions, including—

(aa) unresolved safety questions for drugs or classes of drugs; and

44

(bb) for a newly-approved drugs, safety signals from clinical trials used to approve the drug and other preapproval trials; rare, serious drug side effects; and the safety of use in domestic populations not included, or under-represented, in the trials used to approve the drug (such as older people, people with comorbidities, pregnant women, or children);

(III) perform advanced research and analysis on identified drug safety risks;

(IV) focus postapproval studies and clinical trials under subsection (o)(3) more effectively on cases for which reports under paragraph (1) and other safety signal detection is not sufficient to resolve whether there is an elevated risk of a serious adverse event associated with the use of a drug; and

(V) carry out other activities as the Secretary deems necessary to carry out the purposes of this paragraph.

(ii) REQUEST FOR SPECIFIC METHODOLOGY.—The procedures described in clause (i) shall permit the Secretary to request that a specific methodology be used by the qualified entity. The qualified entity shall work with the Secretary to finalize the methodology to be used.

(E) USE OF ANALYSES.—The Secretary shall provide the analyses described in this paragraph, including the methods and results of such analyses, about a drug to the sponsor or sponsors of such drug.

(F) QUALIFIED ENTITIES.—

(i) IN GENERAL.—The Secretary shall enter into contracts with a sufficient number of qualified entities to develop and provide information to the Secretary in a timely manner.

(ii) QUALIFICATION.—The Secretary shall enter into a contract with an entity under clause (i) only if the Secretary determines that the entity has a significant presence in the United States and has one or more of the following qualifications:

(I) The research, statistical, epidemiologic, or clinical capability and expertise to conduct and complete the activities under this paragraph, including the capability and expertise to provide the Secretary de-identified data consistent with the requirements of this subsection.

(II) An information technology infrastructure in place to support electronic data and operational standards to provide security for such data.

(III) Experience with, and expertise on, the development of drug safety and effectiveness research using electronic population data.

(IV) An understanding of drug development or risk/benefit balancing in a clinical setting.

45

(V) Other expertise which the Secretary deems necessary to fulfill the activities under this paragraph.

(G) CONTRACT REQUIREMENTS.—Each contract with a qualified entity under subparagraph (F)(i) shall contain the following requirements:

(i) ENSURING PRIVACY.—The qualified entity shall ensure that the entity will not use data under this subsection in a manner that—

(I) violates the regulations promulgated under section 264(c) of the Health Insurance Portability and Accountability Act of 1996;

(II) violates sections 552 or 552a of title 5, United States Code, with regard to the privacy of individually-identifiable beneficiary health information; or

(III) discloses individually identifiable health information when presenting drug safety signals and trends or when responding to inquiries regarding drug safety signals and trends.

Nothing in this clause prohibits lawful disclosure for other purposes.

(ii) COMPONENT OF ANOTHER ORGANIZATION.—If a qualified entity is a component of another organization—

(I) the qualified entity shall establish appropriate security measures to maintain the confidentiality and privacy of such data; and

(II) the entity shall not make an unauthorized disclosure of such data to the other components of the organization in breach of such confidentiality and privacy requirement.

(iii) TERMINATION OR NONRENEWAL.—If a contract with a qualified entity under this subparagraph is terminated or not renewed, the following requirements shall apply:

(I) CONFIDENTIALITY AND PRIVACY PROTECTIONS.—The entity shall continue to comply with the confidentiality and privacy requirements under this paragraph with respect to all data disclosed to the entity.

(II) DISPOSITION OF DATA.—The entity shall return any data disclosed to such entity under this subsection to which it would not otherwise have access or, if returning the data is not practicable, destroy the data.

(H) COMPETITIVE PROCEDURES.—The Secretary shall use competitive procedures (as defined in section 4(5) of the Federal Procurement Policy Act) to enter into contracts under subparagraph (G).

(I) REVIEW OF CONTRACT IN THE EVENT OF A MERGER OR ACQUISITION.—The Secretary shall review the contract with a qualified entity under this paragraph in the event of a merger or acquisition of the entity in order to ensure

46

that the requirements under this paragraph will continue to be met.

(J) COORDINATION.—In carrying out this paragraph, the Secretary shall provide for appropriate communications to the public, scientific, public health, and medical communities, and other key stakeholders, and to the extent practicable shall coordinate with the activities of private entities, professional associations, or other entities that may have sources of drug safety data.

(5) The Secretary shall—

(A) conduct regular screenings of the Adverse Event Reporting System database and post a quarterly report on the Adverse Event Reporting System Web site of any new safety information or potential signal of a serious risk identified by Adverse Event Reporting System within the last quarter; and

(B) on an annual basis, review the entire backlog of postmarket safety commitments to determine which commitments require revision or should be eliminated, report to the Congress on these determinations, and assign start dates and estimated completion dates for such commitments; and

(C) make available on the Internet website of the Food and Drug Administration—

(i) guidelines, developed with input from experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, that detail best practices for drug safety surveillance using the Adverse Event Reporting System; and

(ii) criteria for public posting of adverse event signals.

(l)(1) Safety and effectiveness data and information which has been submitted in an application under subsection (b) for a drug and which has not previously been disclosed to the public shall be made available to the public, upon request, unless extraordinary circumstances are shown—

(A) if no work is being or will be undertaken to have the application approved,

(B) if the Secretary has determined that the application is not approvable and all legal appeals have been exhausted,

(C) if approval of the application under subsection (c) is withdrawn and all legal appeals have been exhausted,

(D) if the Secretary has determined that such drug is not a new drug, or

(E) upon the effective date of the approval of the first application under subsection (j) which refers to such drug or upon the date upon which the approval of an application under subsection (j) which refers to such drug could be made effective if such an application had been submitted.

(2) ACTION PACKAGE FOR APPROVAL.—

(A) ACTION PACKAGE.—The Secretary shall publish the action package for approval of an application under subsection (b) or section 351 of the Public Health Service Act on the Internet Web site of the Food and Drug Administration—

(i) not later than 30 days after the date of approval of such application for a drug no active ingredient (including

47

any ester or salt of the active ingredient) of which has been approved in any other application under this section or section 351 of the Public Health Service Act; and

(ii) not later than 30 days after the third request for such action package for approval received under section 552 of title 5, United States Code, for any other drug.

(B) IMMEDIATE PUBLICATION OF SUMMARY REVIEW.—Notwithstanding subparagraph (A), the Secretary shall publish, on the Internet Web site of the Food and Drug Administration, the materials described in subparagraph (C)(iv) not later than 48 hours after the date of approval of the drug, except where such materials require redaction by the Secretary.

(C) CONTENTS.—An action package for approval of an application under subparagraph (A) shall be dated and shall include the following:

(i) Documents generated by the Food and Drug Administration related to review of the application.

(ii) Documents pertaining to the format and content of the application generated during drug development.

(iii) Labeling submitted by the applicant.

(iv) A summary review that documents conclusions from all reviewing disciplines about the drug, noting any critical issues and disagreements with the applicant and within the review team and how they were resolved, recommendations for action, and an explanation of any nonconcurrence with review conclusions.

(v) The Division Director and Office Director's decision document which includes—

(I) a brief statement of concurrence with the summary review;

(II) a separate review or addendum to the review if disagreeing with the summary review; and

(III) a separate review or addendum to the review to add further analysis.

(vi) Identification by name of each officer or employee of the Food and Drug Administration who—

(I) participated in the decision to approve the application; and

(II) consents to have his or her name included in the package.

(D) REVIEW.—A scientific review of an application is considered the work of the reviewer and shall not be altered by management or the reviewer once final.

(E) CONFIDENTIAL INFORMATION.—This paragraph does not authorize the disclosure of any trade secret, confidential commercial or financial information, or other matter listed in section 552(b) of title 5, United States Code.

(m) For purposes of this section, the term "patent" means a patent issued by the United States Patent and Trademark Office.

(n)(1) For the purpose of providing expert scientific advice and recommendations to the Secretary regarding a clinical investigation of a drug or the approval for marketing of a drug under section 505 or section 351 of the Public Health Service Act, the Secretary shall establish panels of experts or use panels of experts established be-

48

fore the date of enactment of the Food and Drug Administration Modernization Act of 1997, or both.

(2) The Secretary may delegate the appointment and oversight authority granted under section 1004 to a director of a center or successor entity within the Food and Drug Administration.

(3) The Secretary shall make appointments to each panel established under paragraph (1) so that each panel shall consist of—

(A) members who are qualified by training and experience to evaluate the safety and effectiveness of the drugs to be referred to the panel and who, to the extent feasible, possess skill and experience in the development, manufacture, or utilization of such drugs;

(B) members with diverse expertise in such fields as clinical and administrative medicine, pharmacy, pharmacology, pharmacoeconomics, biological and physical sciences, and other related professions;

(C) a representative of consumer interests, and a representative of interests of the drug manufacturing industry not directly affected by the matter to be brought before the panel; and

(D) two or more members who are specialists or have other expertise in the particular disease or condition for which the drug under review is proposed to be indicated.

Scientific, trade, and consumer organizations shall be afforded an opportunity to nominate individuals for appointment to the panels. No individual who is in the regular full-time employ of the United States and engaged in the administration of this Act may be a voting member of any panel. The Secretary shall designate one of the members of each panel to serve as chairman thereof.

(4) The Secretary shall, as appropriate, provide education and training to each new panel member before such member participates in a panel's activities, including education regarding requirements under this Act and related regulations of the Secretary, and the administrative processes and procedures related to panel meetings.

(5) Panel members (other than officers or employees of the United States), while attending meetings or conferences of a panel or otherwise engaged in its business, shall be entitled to receive compensation for each day so engaged, including traveltime, at rates to be fixed by the Secretary, but not to exceed the daily equivalent of the rate in effect for positions classified above grade GS–15 of the General Schedule. While serving away from their homes or regular places of business, panel members may be allowed travel expenses (including per diem in lieu of subsistence) as authorized by section 5703 of title 5, United States Code, for persons in the Government service employed intermittently.

(6) The Secretary shall ensure that scientific advisory panels meet regularly and at appropriate intervals so that any matter to be reviewed by such a panel can be presented to the panel not more than 60 days after the matter is ready for such review. Meetings of the panel may be held using electronic communication to convene the meetings.

(7) Within 90 days after a scientific advisory panel makes recommendations on any matter under its review, the Food and Drug Administration official responsible for the matter shall review the

49

conclusions and recommendations of the panel, and notify the affected persons of the final decision on the matter, or of the reasons that no such decision has been reached. Each such final decision shall be documented including the rationale for the decision.

(o) POSTMARKET STUDIES AND CLINICAL TRIALS; LABELING.—

(1) IN GENERAL.—A responsible person may not introduce or deliver for introduction into interstate commerce the new drug involved if the person is in violation of a requirement established under paragraph (3) or (4) with respect to the drug.

(2) DEFINITIONS.—For purposes of this subsection:

(A) RESPONSIBLE PERSON.—The term "responsible person" means a person who—

(i) has submitted to the Secretary a covered application that is pending; or

(ii) is the holder of an approved covered application.

(B) COVERED APPLICATION.—The term "covered application" means—

(i) an application under subsection (b) for a drug that is subject to section 503(b); and

(ii) an application under section 351 of the Public Health Service Act.

(C) NEW SAFETY INFORMATION; SERIOUS RISK.—The terms "new safety information", "serious risk", and "signal of a serious risk" have the meanings given such terms in section 505–1(b).

(3) STUDIES AND CLINICAL TRIALS.—

(A) IN GENERAL.—For any or all of the purposes specified in subparagraph (B), the Secretary may, subject to subparagraph (D), require a responsible person for a drug to conduct a postapproval study or studies of the drug, or a postapproval clinical trial or trials of the drug, on the basis of scientific data deemed appropriate by the Secretary, including information regarding chemically-related or pharmacologically-related drugs.

(B) PURPOSES OF STUDY OR CLINICAL TRIAL.—The purposes referred to in this subparagraph with respect to a postapproval study or postapproval clinical trial are the following:

(i) To assess a known serious risk related to the use of the drug involved.

(ii) To assess signals of serious risk related to the use of the drug.

(iii) To identify an unexpected serious risk when available data indicates the potential for a serious risk.

(C) ESTABLISHMENT OF REQUIREMENT AFTER APPROVAL OF COVERED APPLICATION.—The Secretary may require a postapproval study or studies or postapproval clinical trial or trials for a drug for which an approved covered application is in effect as of the date on which the Secretary seeks to establish such requirement only if the Secretary becomes aware of new safety information.

(D) DETERMINATION BY SECRETARY.—

(i) POSTAPPROVAL STUDIES.—The Secretary may not require the responsible person to conduct a study

50

under this paragraph, unless the Secretary makes a determination that the reports under subsection (k)(1) and the active postmarket risk identification and analysis system as available under subsection (k)(3) will not be sufficient to meet the purposes set forth in subparagraph (B).

(ii) POSTAPPROVAL CLINICAL TRIALS.—The Secretary may not require the responsible person to conduct a clinical trial under this paragraph, unless the Secretary makes a determination that a postapproval study or studies will not be sufficient to meet the purposes set forth in subparagraph (B).

(E) NOTIFICATION; TIMETABLES; PERIODIC REPORTS.—

(i) NOTIFICATION.—The Secretary shall notify the responsible person regarding a requirement under this paragraph to conduct a postapproval study or clinical trial by the target dates for communication of feedback from the review team to the responsible person regarding proposed labeling and postmarketing study commitments as set forth in the letters described in section 101(c) of the Food and Drug Administration Amendments Act of 2007.

(ii) TIMETABLE; PERIODIC REPORTS.—For each study or clinical trial required to be conducted under this paragraph, the Secretary shall require that the responsible person submit a timetable for completion of the study or clinical trial. With respect to each study required to be conducted under this paragraph or otherwise undertaken by the responsible person to investigate a safety issue, the Secretary shall require the responsible person to periodically report to the Secretary on the status of such study including whether any difficulties in completing the study have been encountered. With respect to each clinical trial required to be conducted under this paragraph or otherwise undertaken by the responsible person to investigate a safety issue, the Secretary shall require the responsible person to periodically report to the Secretary on the status of such clinical trial including whether enrollment has begun, the number of participants enrolled, the expected completion date, whether any difficulties completing the clinical trial have been encountered, and registration information with respect to the requirements under section 402(j) of the Public Health Service Act. If the responsible person fails to comply with such timetable or violates any other requirement of this subparagraph, the responsible person shall be considered in violation of this subsection, unless the responsible person demonstrates good cause for such noncompliance or such other violation. The Secretary shall determine what constitutes good cause under the preceding sentence.

(F) DISPUTE RESOLUTION.—The responsible person may appeal a requirement to conduct a study or clinical trial

51

under this paragraph using dispute resolution procedures established by the Secretary in regulation and guidance.

(4) Safety labeling changes requested by secretary.—

(A) New safety or new effectiveness information.—If the Secretary becomes aware of new information, including any new safety information or information related to reduced effectiveness, that the Secretary determines should be included in the labeling of the drug, the Secretary shall promptly notify the responsible person or, if the same drug approved under section 505(b) is not currently marketed, the holder of an approved application under 505(j).

(B) Response to notification.—Following notification pursuant to subparagraph (A), the responsible person or the holder of the approved application under section 505(j) shall within 30 days—

(i) submit a supplement proposing changes to the approved labeling to reflect the new safety information, including changes to boxed warnings, contraindications, warnings, precautions, or adverse reactions, or new effectiveness information; or

(ii) notify the Secretary that the responsible person or the holder of the approved application under section 505(j) does not believe a labeling change is warranted and submit a statement detailing the reasons why such a change is not warranted.

(C) Review.—Upon receipt of such supplement, the Secretary shall promptly review and act upon such supplement. If the Secretary disagrees with the proposed changes in the supplement or with the statement setting forth the reasons why no labeling change is necessary, the Secretary shall initiate discussions to reach agreement on whether the labeling for the drug should be modified to reflect the new safety or new effectiveness information, and if so, the contents of such labeling changes.

(D) Discussions.—Such discussions shall not extend for more than 30 days after the response to the notification under subparagraph (B), unless the Secretary determines an extension of such discussion period is warranted.

(E) Order.—Within 15 days of the conclusion of the discussions under subparagraph (D), the Secretary may issue an order directing the responsible person or the holder of the approved application under section 505(j) to make such a labeling change as the Secretary deems appropriate to address the new safety or new effectiveness information. Within 15 days of such an order, the responsible person or the holder of the approved application under section 505(j) shall submit a supplement containing the labeling change.

(F) Dispute resolution.—Within 5 days of receiving an order under subparagraph (E), the responsible person or the holder of the approved application under section 505(j) may appeal using dispute resolution procedures established by the Secretary in regulation and guidance.

(G) Violation.—If the responsible person or the holder of the approved application under section 505(j) has not

52

submitted a supplement within 15 days of the date of such order under subparagraph (E), and there is no appeal or dispute resolution proceeding pending, the responsible person or holder shall be considered to be in violation of this subsection. If at the conclusion of any dispute resolution procedures the Secretary determines that a supplement must be submitted and such a supplement is not submitted within 15 days of the date of that determination, the responsible person or holder shall be in violation of this subsection.

(H) PUBLIC HEALTH THREAT.—Notwithstanding subparagraphs (A) through (F), if the Secretary concludes that such a labeling change is necessary to protect the public health, the Secretary may accelerate the timelines in such subparagraphs.

(I) RULE OF CONSTRUCTION.—This paragraph shall not be construed to affect the responsibility of the responsible person or the holder of the approved application under section 505(j) to maintain its label in accordance with existing requirements, including subpart B of part 201 and sections 314.70 and 601.12 of title 21, Code of Federal Regulations (or any successor regulations).

(5) NON-DELEGATION.—Determinations by the Secretary under this subsection for a drug shall be made by individuals at or above the level of individuals empowered to approve a drug (such as division directors within the Center for Drug Evaluation and Research).

(p) RISK EVALUATION AND MITIGATION STRATEGY.—

(1) IN GENERAL.—A person may not introduce or deliver for introduction into interstate commerce a new drug if—

(A)(i) the application for such drug is approved under subsection (b) or (j) and is subject to section 503(b); or

(ii) the application for such drug is approved under section 351 of the Public Health Service Act; and

(B) a risk evaluation and mitigation strategy is required under section 505–1 with respect to the drug and the person fails to maintain compliance with the requirements of the approved strategy or with other requirements under section 505–1, including requirements regarding assessments of approved strategies.

(2) CERTAIN POSTMARKET STUDIES.—The failure to conduct a postmarket study under section 506, subpart H of part 314, or subpart E of part 601 of title 21, Code of Federal Regulations (or any successor regulations), is deemed to be a violation of paragraph (1).

(q) PETITIONS AND CIVIL ACTIONS REGARDING APPROVAL OF CERTAIN APPLICATIONS.—

(1) IN GENERAL.—

(A) DETERMINATION.—The Secretary shall not delay approval of a pending application submitted under subsection (b)(2) or (j) of this section or section 351(k) of the Public Health Service Act because of any request to take any form of action relating to the application, either before or during consideration of the request, unless—

53

(i) the request is in writing and is a petition submitted to the Secretary pursuant to section 10.30 or 10.35 of title 21, Code of Federal Regulations (or any successor regulations); and

(ii) the Secretary determines, upon reviewing the petition, that a delay is necessary to protect the public health.

Consideration of the petition shall be separate and apart from review and approval of any application.

(B) NOTIFICATION.—If the Secretary determines under subparagraph (A) that a delay is necessary with respect to an application, the Secretary shall provide to the applicant, not later than 30 days after making such determination, the following information:

(i) Notification of the fact that a determination under subparagraph (A) has been made.

(ii) If applicable, any clarification or additional data that the applicant should submit to the docket on the petition to allow the Secretary to review the petition promptly.

(iii) A brief summary of the specific substantive issues raised in the petition which form the basis of the determination.

(C) FORMAT.—The information described in subparagraph (B) shall be conveyed via either, at the discretion of the Secretary—

(i) a document; or

(ii) a meeting with the applicant involved.

(D) PUBLIC DISCLOSURE.—Any information conveyed by the Secretary under subparagraph (C) shall be considered part of the application and shall be subject to the disclosure requirements applicable to information in such application.

(E) DENIAL BASED ON INTENT TO DELAY.—If the Secretary determines that a petition or a supplement to the petition was submitted with the primary purpose of delaying the approval of an application and the petition does not on its face raise valid scientific or regulatory issues, the Secretary may deny the petition at any point based on such determination. The Secretary may issue guidance to describe the factors that will be used to determine under this subparagraph whether a petition is submitted with the primary purpose of delaying the approval of an application.

(F) FINAL AGENCY ACTION.—The Secretary shall take final agency action on a petition not later than 150 days after the date on which the petition is submitted. The Secretary shall not extend such period for any reason, including—

(i) any determination made under subparagraph (A);

(ii) the submission of comments relating to the petition or supplemental information supplied by the petitioner; or

(iii) the consent of the petitioner.

54

(G) EXTENSION OF 30-MONTH PERIOD.—If the filing of an application resulted in first-applicant status under subsection (j)(5)(D)(i)(IV) and approval of the application was delayed because of a petition, the 30-month period under such subsection is deemed to be extended by a period of time equal to the period beginning on the date on which the Secretary received the petition and ending on the date of final agency action on the petition (inclusive of such beginning and ending dates), without regard to whether the Secretary grants, in whole or in part, or denies, in whole or in part, the petition.

(H) CERTIFICATION.—The Secretary shall not consider a petition for review unless the party submitting such petition does so in written form and the subject document is signed and contains the following certification: "I certify that, to my best knowledge and belief: (a) this petition includes all information and views upon which the petition relies; (b) this petition includes representative data and/or information known to the petitioner which are unfavorable to the petition; and (c) I have taken reasonable steps to ensure that any representative data and/or information which are unfavorable to the petition were disclosed to me. I further certify that the information upon which I have based the action requested herein first became known to the party on whose behalf this petition is submitted on or about the following date: _____. If I received or expect to receive payments, including cash and other forms of consideration, to file this information or its contents, I received or expect to receive those payments from the following persons or organizations: _____. I verify under penalty of perjury that the foregoing is true and correct as of the date of the submission of this petition.", with the date on which such information first became known to such party and the names of such persons or organizations inserted in the first and second blank space, respectively.

(I) VERIFICATION.—The Secretary shall not accept for review any supplemental information or comments on a petition unless the party submitting such information or comments does so in written form and the subject document is signed and contains the following verification: "I certify that, to my best knowledge and belief: (a) I have not intentionally delayed submission of this document or its contents; and (b) the information upon which I have based the action requested herein first became known to me on or about _____. If I received or expect to receive payments, including cash and other forms of consideration, to file this information or its contents, I received or expect to receive those payments from the following persons or organizations: _____. I verify under penalty of perjury that the foregoing is true and correct as of the date of the submission of this petition.", with the date on which such information first became known to the party and the names of such persons or organizations inserted in the first and second blank space, respectively.

55

(2) EXHAUSTION OF ADMINISTRATIVE REMEDIES.—

(A) FINAL AGENCY ACTION WITHIN 150 DAYS.—The Secretary shall be considered to have taken final agency action on a petition if—

(i) during the 150-day period referred to in paragraph (1)(F), the Secretary makes a final decision within the meaning of section 10.45(d) of title 21, Code of Federal Regulations (or any successor regulation); or

(ii) such period expires without the Secretary having made such a final decision.

(B) DISMISSAL OF CERTAIN CIVIL ACTIONS.—If a civil action is filed against the Secretary with respect to any issue raised in the petition before the Secretary has taken final agency action on the petition within the meaning of subparagraph (A), the court shall dismiss without prejudice the action for failure to exhaust administrative remedies.

(C) ADMINISTRATIVE RECORD.—For purposes of judicial review related to the approval of an application for which a petition under paragraph (1) was submitted, the administrative record regarding any issue raised by the petition shall include—

(i) the petition filed under paragraph (1) and any supplements and comments thereto;

(ii) the Secretary's response to such petition, if issued; and

(iii) other information, as designated by the Secretary, related to the Secretary's determinations regarding the issues raised in such petition, as long as the information was considered by the agency no later than the date of final agency action as defined under subparagraph (2)(A), and regardless of whether the Secretary responded to the petition at or before the approval of the application at issue in the petition.

(3) ANNUAL REPORT ON DELAYS IN APPROVALS PER PETITIONS.—The Secretary shall annually submit to the Congress a report that specifies—

(A) the number of applications that were approved during the preceding 12-month period;

(B) the number of such applications whose effective dates were delayed by petitions referred to in paragraph (1) during such period;

(C) the number of days by which such applications were so delayed; and

(D) the number of such petitions that were submitted during such period.

(4) EXCEPTIONS.—

(A) This subsection does not apply to—

(i) a petition that relates solely to the timing of the approval of an application pursuant to subsection (j)(5)(B)(iv); or

(ii) a petition that is made by the sponsor of an application and that seeks only to have the Secretary take or refrain from taking any form of action with respect to that application.

56

(B) Paragraph (2) does not apply to a petition addressing issues concerning an application submitted pursuant to section 351(k) of the Public Health Service Act.

(5) DEFINITIONS.—

(A) APPLICATION.—For purposes of this subsection, the term "application" means an application submitted under subsection (b)(2) or (j) of this section or section 351(k) of the Public Health Service Act.

(B) PETITION.—For purposes of this subsection, other than paragraph (1)(A)(i), the term "petition" means a request described in paragraph (1)(A)(i).

(r) POSTMARKET DRUG SAFETY INFORMATION FOR PATIENTS AND PROVIDERS.—

(1) ESTABLISHMENT.—Not later than 1 year after the date of the enactment of the Food and Drug Administration Amendments Act of 2007, the Secretary shall improve the transparency of information about drugs and allow patients and health care providers better access to information about drugs by developing and maintaining an Internet Web site that—

(A) provides links to drug safety information listed in paragraph (2) for prescription drugs that are approved under this section or licensed under section 351 of the Public Health Service Act; and

(B) improves communication of drug safety information to patients and providers.

(2) INTERNET WEB SITE.—The Secretary shall carry out paragraph (1) by—

(A) developing and maintaining an accessible, consolidated Internet Web site with easily searchable drug safety information, including the information found on United States Government Internet Web sites, such as the United States National Library of Medicine's Daily Med and Medline Plus Web sites, in addition to other such Web sites maintained by the Secretary;

(B) ensuring that the information provided on the Internet Web site is comprehensive and includes, when available and appropriate—

(i) patient labeling and patient packaging inserts;

(ii) a link to a list of each drug, whether approved under this section or licensed under such section 351, for which a Medication Guide, as provided for under part 208 of title 21, Code of Federal Regulations (or any successor regulations), is required;

(iii) a link to the registry and results data bank provided for under subsections (i) and (j) of section 402 of the Public Health Service Act;

(iv) the most recent safety information and alerts issued by the Food and Drug Administration for drugs approved by the Secretary under this section, such as product recalls, warning letters, and import alerts;

(v) publicly available information about implemented RiskMAPs and risk evaluation and mitigation strategies under subsection (o);

(vi) guidance documents and regulations related to drug safety; and

57

(vii) other material determined appropriate by the Secretary;

(C) providing access to summaries of the assessed and aggregated data collected from the active surveillance infrastructure under subsection (k)(3) to provide information of known and serious side-effects for drugs approved under this section or licensed under such section 351;

(D) preparing and making publicly available on the Internet website established under paragraph (1) best practices for drug safety surveillance activities for drugs approved under this section or section 351 of the Public Health Service Act;

(E) enabling patients, providers, and drug sponsors to submit adverse event reports through the Internet Web site;

(F) providing educational materials for patients and providers about the appropriate means of disposing of expired, damaged, or unusable medications; and

(G) supporting initiatives that the Secretary determines to be useful to fulfill the purposes of the Internet Web site.

(3) POSTING OF DRUG LABELING.—The Secretary shall post on the Internet Web site established under paragraph (1) the approved professional labeling and any required patient labeling of a drug approved under this section or licensed under such section 351 not later than 21 days after the date the drug is approved or licensed, including in a supplemental application with respect to a labeling change.

(4) PRIVATE SECTOR RESOURCES.—To ensure development of the Internet Web site by the date described in paragraph (1), the Secretary may, on a temporary or permanent basis, implement systems or products developed by private entities.

(5) AUTHORITY FOR CONTRACTS.—The Secretary may enter into contracts with public and private entities to fulfill the requirements of this subsection.

(6) REVIEW.—The Advisory Committee on Risk Communication under section 567 shall, on a regular basis, perform a comprehensive review and evaluation of the types of risk communication information provided on the Internet Web site established under paragraph (1) and, through other means, shall identify, clarify, and define the purposes and types of information available to facilitate the efficient flow of information to patients and providers, and shall recommend ways for the Food and Drug Administration to work with outside entities to help facilitate the dispensing of risk communication information to patients and providers.

(s) REFERRAL TO ADVISORY COMMITTEE.—Prior to the approval of a drug no active ingredient (including any ester or salt of the active ingredient) of which has been approved in any other application under this section or section 351 of the Public Health Service Act, the Secretary shall—

(1) refer such drug to a Food and Drug Administration advisory committee for review at a meeting of such advisory committee; or

(2) if the Secretary does not refer such a drug to a Food and Drug Administration advisory committee prior to the approval

58

of the drug, provide in the action letter on the application for the drug a summary of the reasons why the Secretary did not refer the drug to an advisory committee prior to approval.

(t) DATABASE FOR AUTHORIZED GENERIC DRUGS.—

(1) IN GENERAL.—

(A) PUBLICATION.—The Commissioner shall—

(i) not later than 9 months after the date of the enactment of the Food and Drug Administration Amendments Act of 2007, publish a complete list on the Internet Web site of the Food and Drug Administration of all authorized generic drugs (including drug trade name, brand company manufacturer, and the date the authorized generic drug entered the market); and

(ii) update the list quarterly to include each authorized generic drug included in an annual report submitted to the Secretary by the sponsor of a listed drug during the preceding 3-month period.

(B) NOTIFICATION.—The Commissioner shall notify relevant Federal agencies, including the Centers for Medicare & Medicaid Services and the Federal Trade Commission, when the Commissioner first publishes the information described in subparagraph (A) that the information has been published and that the information will be updated quarterly.

(2) INCLUSION.—The Commissioner shall include in the list described in paragraph (1) each authorized generic drug included in an annual report submitted to the Secretary by the sponsor of a listed drug after January 1, 1999.

(3) AUTHORIZED GENERIC DRUG.—In this section, the term "authorized generic drug" means a listed drug (as that term is used in subsection (j)) that—

(A) has been approved under subsection (c); and

(B) is marketed, sold, or distributed directly or indirectly to retail class of trade under a different labeling, packaging (other than repackaging as the listed drug in blister packs, unit doses, or similar packaging for use in institutions), product code, labeler code, trade name, or trade mark than the listed drug.

(u) CERTAIN DRUGS CONTAINING SINGLE ENANTIOMERS.—

(1) IN GENERAL.—For purposes of subsections (c)(3)(E)(ii) and (j)(5)(F)(ii), if an application is submitted under subsection (b) for a non-racemic drug containing as an active ingredient (including any ester or salt of the active ingredient) a single enantiomer that is contained in a racemic drug approved in another application under subsection (b), the applicant may, in the application for such non-racemic drug, elect to have the single enantiomer not be considered the same active ingredient as that contained in the approved racemic drug, if—

(A)(i) the single enantiomer has not been previously approved except in the approved racemic drug; and

(ii) the application submitted under subsection (b) for such non-racemic drug—

(I) includes full reports of new clinical investigations (other than bioavailability studies)—

59

(aa) necessary for the approval of the application under subsections (c) and (d); and

(bb) conducted or sponsored by the applicant; and

(II) does not rely on any clinical investigations that are part of an application submitted under subsection (b) for approval of the approved racemic drug; and

(B) the application submitted under subsection (b) for such non-racemic drug is not submitted for approval of a condition of use—

(i) in a therapeutic category in which the approved racemic drug has been approved; or

(ii) for which any other enantiomer of the racemic drug has been approved.

(2) LIMITATION.—

(A) NO APPROVAL IN CERTAIN THERAPEUTIC CATEGORIES.—Until the date that is 10 years after the date of approval of a non-racemic drug described in paragraph (1) and with respect to which the applicant has made the election provided for by such paragraph, the Secretary shall not approve such non-racemic drug for any condition of use in the therapeutic category in which the racemic drug has been approved.

(B) LABELING.—If applicable, the labeling of a non-racemic drug described in paragraph (1) and with respect to which the applicant has made the election provided for by such paragraph shall include a statement that the non-racemic drug is not approved, and has not been shown to be safe and effective, for any condition of use of the racemic drug.

(3) DEFINITION.—

(A) IN GENERAL.—For purposes of this subsection, the term "therapeutic category" means a therapeutic category identified in the list developed by the United States Pharmacopeia pursuant to section 1860D–4(b)(3)(C)(ii) of the Social Security Act and as in effect on the date of the enactment of this subsection.

(B) PUBLICATION BY SECRETARY.—The Secretary shall publish the list described in subparagraph (A) and may amend such list by regulation.

(4) AVAILABILITY.—The election referred to in paragraph (1) may be made only in an application that is submitted to the Secretary after the date of the enactment of this subsection and before October 1, 2022.

(v) ANTIBIOTIC DRUGS SUBMITTED BEFORE NOVEMBER 21, 1997.—

(1) ANTIBIOTIC DRUGS APPROVED BEFORE NOVEMBER 21, 1997.—

(A) IN GENERAL.—Notwithstanding any provision of the Food and Drug Administration Modernization Act of 1997 or any other provision of law, a sponsor of a drug that is the subject of an application described in subparagraph (B)(i) shall be eligible for, with respect to the drug, the 3-year exclusivity period referred to under clauses (iii) and (iv) of subsection (c)(3)(E) and under clauses (iii) and (iv)

60

of subsection (j)(5)(F), subject to the requirements of such clauses, as applicable.

(B) APPLICATION; ANTIBIOTIC DRUG DESCRIBED.—

(i) APPLICATION.—An application described in this clause is an application for marketing submitted under this section after the date of the enactment of this subsection in which the drug that is the subject of the application contains an antibiotic drug described in clause (ii).

(ii) ANTIBIOTIC DRUG.—An antibiotic drug described in this clause is an antibiotic drug that was the subject of an application approved by the Secretary under section 507 of this Act (as in effect before November 21, 1997).

(2) ANTIBIOTIC DRUGS SUBMITTED BEFORE NOVEMBER 21, 1997, BUT NOT APPROVED.—

(A) IN GENERAL.—Notwithstanding any provision of the Food and Drug Administration Modernization Act of 1997 or any other provision of law, a sponsor of a drug that is the subject of an application described in subparagraph (B)(i) may elect to be eligible for, with respect to the drug—

(i)(I) the 3-year exclusivity period referred to under clauses (iii) and (iv) of subsection (c)(3)(E) and under clauses (iii) and (iv) of subsection (j)(5)(F), subject to the requirements of such clauses, as applicable; and

(II) the 5-year exclusivity period referred to under clause (ii) of subsection (c)(3)(E) and under clause (ii) of subsection (j)(5)(F), subject to the requirements of such clauses, as applicable; or

(ii) a patent term extension under section 156 of title 35, United States Code, subject to the requirements of such section.

(B) APPLICATION; ANTIBIOTIC DRUG DESCRIBED.—

(i) APPLICATION.—An application described in this clause is an application for marketing submitted under this section after the date of the enactment of this subsection in which the drug that is the subject of the application contains an antibiotic drug described in clause (ii).

(ii) ANTIBIOTIC DRUG.—An antibiotic drug described in this clause is an antibiotic drug that was the subject of 1 or more applications received by the Secretary under section 507 of this Act (as in effect before November 21, 1997), none of which was approved by the Secretary under such section.

(3) LIMITATIONS.—

(A) EXCLUSIVITIES AND EXTENSIONS.—Paragraphs (1)(A) and (2)(A) shall not be construed to entitle a drug that is the subject of an approved application described in subparagraphs (1)(B)(i) or (2)(B)(i), as applicable, to any market exclusivities or patent extensions other than those exclusivities or extensions described in paragraph (1)(A) or (2)(A).

61

(B) CONDITIONS OF USE.—Paragraphs (1)(A) and (2)(A)(i) shall not apply to any condition of use for which the drug referred to in subparagraph (1)(B)(i) or (2)(B)(i), as applicable, was approved before the date of the enactment of this subsection.

(4) APPLICATION OF CERTAIN PROVISIONS.—Notwithstanding section 125, or any other provision, of the Food and Drug Administration Modernization Act of 1997, or any other provision of law, and subject to the limitations in paragraphs (1), (2), and (3), the provisions of the Drug Price Competition and Patent Term Restoration Act of 1984 shall apply to any drug subject to paragraph (1) or any drug with respect to which an election is made under paragraph (2)(A).

(w) DEADLINE FOR DETERMINATION ON CERTAIN PETITIONS.—The Secretary shall issue a final, substantive determination on a petition submitted pursuant to subsection (b) of section 314.161 of title 21, Code of Federal Regulations (or any successor regulations), no later than 270 days after the date the petition is submitted.

(x) DATE OF APPROVAL IN THE CASE OF RECOMMENDED CONTROLS UNDER THE CSA.—

(1) IN GENERAL.—In the case of an application under subsection (b) with respect to a drug for which the Secretary provides notice to the sponsor that the Secretary intends to issue a scientific and medical evaluation and recommend controls under the Controlled Substances Act, approval of such application shall not take effect until the interim final rule controlling the drug is issued in accordance with section 201(j) of the Controlled Substances Act.

(2) DATE OF APPROVAL.—For purposes of this section, with respect to an application described in paragraph (1), the term "date of approval" shall mean the later of—

(A) the date an application under subsection (b) is approved under subsection (c); or

(B) the date of issuance of the interim final rule controlling the drug.

(y) CONTRAST AGENTS INTENDED FOR USE WITH APPLICABLE MEDICAL IMAGING DEVICES.—

(1) IN GENERAL.—The sponsor of a contrast agent for which an application has been approved under this section may submit a supplement to the application seeking approval for a new use following the authorization of a premarket submission for an applicable medical imaging device for that use with the contrast agent pursuant to section 520(p)(1).

(2) REVIEW OF SUPPLEMENT.—In reviewing a supplement submitted under this subsection, the agency center charged with the premarket review of drugs may—

(A) consult with the center charged with the premarket review of devices; and

(B) review information and data submitted to the Secretary by the sponsor of an applicable medical imaging device pursuant to section 515, 510(k), or 513(f)(2) so long as the sponsor of such applicable medical imaging device has provided to the sponsor of the contrast agent a right of reference.

(3) DEFINITIONS.—For purposes of this subsection—

62

(A) the term "new use" means a use of a contrast agent that is described in the approved labeling of an applicable medical imaging device described in section 520(p), but that is not described in the approved labeling of the contrast agent; and

(B) the terms "applicable medical imaging device" and "contrast agent" have the meanings given such terms in section 520(p).

\*        \*        \*        \*        \*        \*        \*

○